[Nos. 36934, 36967.  Department Two.  December 31, 1964.]

THE STATE OF WASHINGTON, *Respondent*, v. LLOYD JONES
*et al., Appellants.**

*George Livesey, Jr.*, for appellant Lloyd Jones.

*Carl F. Roehl*, for appellant Gordon Jones.

*Richard A. Nelle* and *William A. Gardiner*, for respondent.

*Reported in 397 P. (2d) 815.

HAMILTON, J.—The defendants, Lloyd Jones and Gordon Jones, were jointly charged, tried, and convicted under RCW 9.54.020[1] the "joy riding" statute. They appeal.

At all times concerned, the defendants, who are not related, resided on the Lummi Indian Reservation in Whatcom County. On August 10, 1962, both, independently, found their way into the city of Bellingham. A chance meeting of the two in the city furnished the occasion for an alcoholic carousal. During the evening, a purple automobile was taken from a used-car lot in Bellingham without permission of the owner. This automobile furnished the defendants with transportation back to the Lummi Indian Reservation and to a party there in progress.

Witnesses for the state gave testimony which described the physical taking of the automobile as a mutual effort of three persons—the two defendants and Michael Lawrence, a 15-year-old boy who lived a short distance from the used-car lot. Michael, who had admitted his participation in and guilt of the offense, testified for the state. He stated that during the afternoon of August 10th he and Lloyd Jones visited the car lot in an effort to sell some hubcaps and at that time looked at and admired the purple automobile. Following this and a frustrated effort to borrow a car belonging to Lloyd's sister, Michael said he and the two defendants went to the car lot after dark from whence the purple automobile was pushed to his home and there "hot wired," whereupon, with Lloyd Jones driving, they departed for the Lummi Indian Reservation. Michael's aunt was in his mother's house at the time. She testified that she saw a purple car, with the hood up, parked in the vicinity of the house with Lloyd and Gordon Jones standing by it. She

---

[1]"Every person who shall without the permission of the owner or person entitled to the possession thereof intentionally take or drive away any automobile or motor vehicle, whether propelled by steam, electricity or internal combustion engine, the property of another, shall be deemed guilty of a felony, and every person voluntarily riding in or upon said automobile or motor vehicle with knowledge of the fact that the same was unlawfully taken shall be equally guilty with the person taking or driving said automobile or motor vehicle and shall be deemed guilty of a felony." RCW 9.54.020.

estimated the time between 10 and 10:30 p.m. Other witnesses corroborated various facets of Michael's testimony and a pretrial oral statement of Gordon Jones tended to support Michael's version.

The defendants, in their testimony at the trial, however, denied participation in the theft of the automobile. They testified that their first encounter with the vehicle was when Michael picked them up as they were hitchhiking home, following which Lloyd Jones drove the car. They stated that Michael told them he owned the car, and that they were surprised and aggrieved to learn the next morning that Michael had stolen it. Their testimony was in some respects corroborated by other witnesses.

The information upon which defendants were brought to trial charged them with intentionally taking or driving away the automobile without permission. It did not charge them under the second portion of RCW 9.54.020 which relates to voluntarily riding in a vehicle known to have been unlawfully taken. The trial court, in submitting the case to the jury, instructed that conviction could result upon a finding of either "taking" or "riding." The situation thus presented gives rise to two claims of error mutually advanced by the defendants (a) that the evidence was insufficient to warrant submitting the case to the jury or to sustain a conviction upon either prong of the statute, and (b) that submission of the "riding" theory to the jury constituted a variance from the information and a denial of defendants' rights under Const. Art. 1, § 22 (amendment 10).[2]

We find no merit in either claim of error.

Defendants base their first contention upon the assertion that the elements of intent or culpable knowledge, necessary to establish the respective theories of guilt, are not established by the evidence. They predicate this claim upon evidence tending to indicate that, within the framework of

[2]"In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him, . . ." Const. Art. 1, § 22 (amendment 10).

any version of events, they were laboring under the impression that the automobile belonged to Michael Lawrence.

Opposed to defendants' claim, and the evidence relied upon in support thereof, stands, under the state's version of the occurrence, the strong inference of defendants' intentional theft of the automobile, to be drawn from the testimony of Michael and his aunt. And, on the other hand, under the defendants' version, stands the reasonable inference of culpable knowledge of the theft, to be drawn from the undisputed fact that the defendants, bent on a gay evening, had gone to some lengths with Michael in a frustrated effort to borrow an automobile, following which Michael appeared with the purple automobile which defendant Lloyd Jones thereafter commenced to drive. The jury was not, under either version, compelled to accept defendants' thesis that they believed 15-year-old Michael owned the automobile. The jury could well have found, however the car was removed from the lot, that the defendants and Michael Lawrence were involved in a common and concerted escapade.

■ Defendants' second contention—that submission of the "riding" phase of RCW 9.54.020 constituted a variance and an invasion of their constitutional right to know the nature and cause of the accusation—springs from their claim that the evidence could be construed to indicate that Michael Lawrence was the principal architect or perpetrator of the crime. From this premise they assert that, since Michael was not jointly charged with them, they could not, under the information as drawn, be convicted as aiders or abettors within the contemplation of *State v. McCaskey*, 55 Wn. (2d) 329, 332, 347 P. (2d) 895 (1959), where, in approving submission of the "riding" prong of the statute under a similar information, we stated:

"Certain it is, however, that, if the appellant alone had been charged with the crime of taking the motor vehicle without the owner's permission by driving it away, he could not be convicted by proof that he rode in the vehicle knowing it to be stolen. But here he was charged jointly with McCaskey who pleaded guilty. The testimony, that appellant willfully rode in the stolen car with guilty knowledge, by

operation of RCW 9.54.020 brought appellant within the scope of RCW 9.01.030. The language of the former statute, by providing that a culpable rider is equally guilty with the driver, declares that the act described shall be deemed in law the equivalent of aiding, abetting, counseling, or encouraging the principal act. RCW 9.54.020 denotes as 'aiding and abetting' in law that which would independently have been strong evidence of such participation. Therefore, appellant's riding in the stolen car with guilty knowledge, by reason of the statute making him equally guilty with the driver, constituted him an aider and abettor of the principal act of the codefendant. RCW 9.01.030 makes such principal act the act of the aider and abettor. Both are principals and chargeable as such.

"Where two defendants are charged jointly as principals and there is proof that one acted as aider and abettor, by reason of the statute (RCW 9.01.030), the proof will sustain the charge and conviction of both as principals. The joint information is fair notice to the appellant under the quoted statute [RCW 9.01.030] that the act of the codefendant is the act of the appellant."

In short, the core of defendants' contention is that, under the rule of *State v. McCaskey, supra*, a culpable rider, to be convicted of "riding," must be so charged, unless he is jointly charged with the "taker." We have no quarrel with this interpretation of *State v. McCaskey, supra*, for we believe it correctly reflects a facet of that decision. However, the difficulty in applying it as defendants would have it here applied is that the evidence does not compel the conclusion that Michael Lawrence was the sole perpetrator of the actual theft. As we have heretofore indicated, the evidence is supportive of a conclusion that the defendants and Michael were mutually engaged in a common and concerted escapade. Such being the case, all were chargeable as principals or "takers," and the fact that only two were jointly charged does not diminish the notice to either one so charged that the state's proof may show culpable "riding" as well as intentional "taking."

It is finally contended, on behalf of defendant Gordon Jones, that the trial court erred in admitting into evidence incriminating oral and written statements given by him

following his arrest. This claim of error is predicated upon the assertion that the statements were involuntarily given, and that the trial court did not adhere to the confession procedures outlined in Rule of Pleading, Practice and Procedure 101.20W, RCW Vol. 0.[3]

■ We find no merit in this assignment of error for the following reasons: (1) Prior to admitting the statements into evidence, the trial court did, at defendants' behest,

---

[3]"(a) *Requirement for and Time of Hearing.* In every criminal case in which a confession or confessions of the accused are to be offered in evidence, the judge, either at the time of the trial or prior thereto, shall hold a hearing, in the absence of the jury for the purpose of determining whether, in the light of the surrounding circumstances, the confession was voluntary, and, therefore admissible. A court reporter shall record the evidence adduced at this hearing.

"(b) *Duty of Trial Judge to Inform Defendant.* It shall be the duty of the trial judge to inform the defendant that: (1) he may, but need not, testify at the hearing on the circumstances surrounding the confession; (2) if he does testify at the hearing, he will be subject to cross-examination with respect to the circumstances surrounding the taking of the confession and with respect to his credibility for purposes of impeachment as a witness; (3) even though he does testify at the hearing, he does not by so testifying waive his right to remain silent during the trial; and (4) if he does so testify at the hearing, neither this fact nor his testimony at the hearing shall be mentioned to the jury unless he becomes a witness on the confession issue during the trial.

"(c) *Duty of Trial Judge to Make a Record.* After the hearing the trial judge shall set forth in writing (1) the undisputed facts; (2) the disputed facts; (3) his conclusions as to the disputed facts; (4) his conclusion as to whether the confession was voluntary and admissible, or involuntary and inadmissible, with reasons in either case.

"(d) *Rights of Defendant when Confession is Ruled Admissible.* If the trial judge rules that the confession is admissible, and it is offered in evidence: (1) the defense may offer evidence, or cross-examine the witnesses, with respect to the circumstances surrounding the confession, without waiving an objection to the admissibility of the confession; (2) no reference shall be made to the fact, if it be so, that the defendant testified at the preliminary hearing on the admissibility of the confession, unless the defendant takes the witness stand on the confession issue at the trial; (3) if the defendant becomes a witness on this issue, he shall be subject to cross-examination to the same extent as would any other witness; and (4) if the defense raises the issue of voluntariness under (1) above, the jury shall be instructed that they may give such weight and credibility to the confession, in view of the surrounding circumstances, as they see fit." Rule of Pleading, Practice and Procedure 101.20W, RCW Vol. 0.

conduct a hearing in the absence of the jury relative to the circumstances surrounding the giving of the statements; (2) our review of all evidence then and thereafter adduced,[4] bearing upon the issue of voluntariness as raised by the defendants, satisfies us that the statements were voluntarily made; and (3) the trial court's failure to adhere strictly to the provisions of the confession rule did not in fact result in a violation of defendants' constitutional rights.

In passing, it should be noted that the state sought to bypass the provisions of Rule of Pleading, Practice and Procedure 101.20W, *supra,* upon the basis that the statements in question did not, in the technical sense, amount to confessions. The statements were, however, quite incriminating and their admissibility was challenged upon the ground that they were involuntarily induced. Under such circumstances, the requirements of due process are not to be measured by hairline distinctions between admissions, exculpatory statements, and confessions. The procedure outlined in Rule 101.20W, *supra,* should be invoked.

The judgment is affirmed.

OTT, C. J., HILL and WEAVER, JJ., and EDGERTON, J. Pro Tem., concur.

---

[4]The defendant Gordon Jones did not take the stand during the hearing conducted in the absence of the jury. He relied, instead, upon cross-examination of the police officer who heard and took the statements in issue to support his claim of involuntariness. This defendant did, however, take the stand in his own defense and, in the presence of the jury, gave testimony implying that at least one of the statements was wrongfully induced. That the defendant was aware of the provisions of Rule of Pleading, Practice and Procedure 101.20W, Vol. 0, would appear implicit from the fact that it formed the basis of his counsel's initial objection to the statements.