[No. 38266.    Department One.    September 15, 1966.]

THE STATE OF WASHINGTON, *Respondent*, v. ELDRIDGE
SHELBY, *Appellant.*\*

\*Reported in 418 P.2d 246.

*Sullivan, Guterson, LaRose & Rindal,* by *Frank L. Sullivan,* for appellant (Appointed counsel for appeal).

*Charles O. Carroll* and *Robert E. Dixon,* for respondent.

OTT, J.—October 25, 1964, Claude R. Williams was stabbed to death by Eldridge Shelby. The homicide was witnessed by Andrew Zavada. The altercation between Williams and Shelby just before the stabbing was overheard and seen by several witnesses. When the officers arrived at the scene of the homicide and inquired what had happened, Eldridge Shelby stated to one, "I was involved," and to the other, "I did it," but would make no further statement without advice of counsel. He was charged with murder in the second degree. The jury returned a verdict of guilty as charged.

From the judgment and sentence entered upon the verdict, Eldridge Shelby has appealed.

Counsel who represented appellant at the trial has withdrawn, and present counsel was appointed by the court to represent appellant.

Appellant's first assignment of error is that the court

did not comply with Rule of Pleading, Practice and Procedure 101.20W(c), RCW vol. 0, in failing to enter written findings of fact and conclusions relative to the voluntariness of the alleged confession of the appellant. RPPP 101.20W, RCW vol. 0, provides in part:

(a) *Requirement for and Time of Hearing.* In every criminal case in which a confession or confessions of the accused are to be offered in evidence, the judge, either at the time of the trial or prior thereto, shall hold a hearing, in the absence of the jury for the purpose of determining whether, in the light of the surrounding circumstances, the confession was voluntary, and, therefore, admissible. A court reporter shall record the evidence adduced at this hearing.

(b) *Duty of Trial Judge to Inform Defendant.* It shall be the duty of the trial judge to inform the defendant that: (1) he may, but need not, testify at the hearing on the circumstances surrounding the confession; (2) if he does testify at the hearing, he will be subject to cross-examination with respect to the circumstances surrounding the taking of the confession and with respect to his credibility for purposes of impeachment as a witness; (3) even though he does testify at the hearing, he does not by so testifying waive his right to remain silent during the trial; and (4) if he does so testify at the hearing, neither this fact nor his testimony at the hearing shall be mentioned to the jury unless he becomes a witness on the confession issue during the trial.

(c) *Duty of Trial Judge to Make a Record.* After the hearing the trial judge shall set forth in writing (1) the undisputed facts; (2) the disputed facts; (3) his conclusions as to the disputed facts; (4) his conclusion as to whether the confession was voluntary and admissible, or involuntary and inadmissible, with reasons in either case.

Pursuant to the deputy prosecutor's suggestion, a hearing was held, in the absence of the jury, to determine the voluntariness of appellant's statements, which were made as he stood near the body of Williams at the scene of the homicide.

In compliance with the rule, the court advised the appellant at this pretrial hearing that he could testify without waiving his constitutional right to remain silent at the trial.

He elected to remain silent. At the conclusion of the pretrial hearing, the court stated:

The statute provides or rather the rule provides that after the hearing the court shall set forth in writing the undisputed facts, the disputed facts, and his conclusions as to the disputed facts, his conclusion as to whether the confession and in this case it would be the incriminating statements were voluntary and admissible or involuntary and inadmissible.

The court finds that there are no disputed facts; that the facts indicate that at the hour of approximately 3:10 PM. on the 25th day of October, 1964, Officers Olson and Youngquist were in their prowler car, and some bystander advised them that there had been some disturbance, someone had been stabbed to death at the coffee shop at the New Richmond Hotel. They were then perhaps a block and a half away.

They then proceeded to the hotel, and as they arrived at the hotel or on the way to the hotel they also received a radio call advising them that there was a disturbance at the hotel. The officer stopped the prowler car, and Officer Olson was directed to the south entrance at the hotel; and as he went into the door, he observed the defendant standing looking towards the front; that is, he observed him sideways. He addressed the defendant and asked him if he knew anything about the stabbing in the cafe, and the defendant turned to him and responded, "I was involved."

The officer, that is Officer Olson, thereupon directed the defendant to go to the front of the cafe where he was turned over to his partner, Officer Youngquist.

Officer Youngquist then asked the defendant within a very few minutes after he was put in his presence what he knew about either this killing or this cutting or this stabbing. The defendant after the question was put to him probably for the second time responded, "I did it."

The court finds that these statements were voluntarily made, were not made under duress or coercion or by virtue of any threats, and, therefore, would be admissible in evidence.

*The reporter if necessary will write up the court's findings and decision.* (Italics ours.)

The entire record of the pretrial proceedings has been transcribed and is before us for review. There is ample

evidence to sustain the trial court's finding that the statements made by appellant were voluntary, and the court did not err in permitting the witnesses to testify relative to the spontaneous statements made by appellant at the scene of the homicide.

In considering RPPP 101.20W and the failure of the trial court to enter formal findings as the rule requires, we said, in *State v. Jones,* 65 Wn.2d 449, 455, 397 P.2d 815 (1964):

> (2) [O]ur review of all evidence then and thereafter adduced, bearing upon the issue of voluntariness as raised by the defendants, satisfies us that the statements were voluntarily made; and (3) the trial court's failure to adhere strictly to the provisions of the confession rule did not in fact result in a violation of defendants' constitutional rights.

In *State v. Moore,* 61 Wn.2d 165, 377 P.2d 456 (1963), an *en banc* decision, this court, in considering RPPP 101.20W, held that "The purpose of the rule is to have a record made," and that a complete transcript of the pretrial proceedings for appellate review satisfied the requirements of the rule.

In *Jackson v. Denno,* 378 U. S. 368, 12 L. Ed. 2d 908, 84 Sup. Ct. 1774 (1964), the Supreme Court of the United States, in directing prehearing procedure to determine the voluntariness of a confession, said at 380:

> A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined.

In compliance with the rule announced in the *Jackson* case, we held, in *State v. Taplin,* 66 Wn.2d 687, 404 P.2d 469 (1965), that the pretrial procedure rule is designed to prescribe a uniform procedure for the admission of a confession into evidence, and stated at 691: "We now hold that the language in Rule 101.20W is mandatory."

In the instant case, the pretrial procedure was precisely followed. An opportunity was afforded the appellant to testify in his own behalf, without prejudice to his right to remain silent at the trial, and to present any evidence he might choose to offer to dispute the evidence of the

state. A complete pretrial hearing was conducted, and the record preserved and transcribed for appellate review. The only part of the rule which was not complied with in the instant case was the formal entry of the court's factual findings. At the trial, the judge permitted the evidence to be considered by the jury for the reason that he had previously, at the pretrail hearing, found that the statements were voluntarily made.

We reaffirm our holding in the *Taplin* case that the provisions of RPPP 101.20W are mandatory. The issue presented in this appeal is whether the requirement of formal entry of the findings was knowingly and intentionally waived by the appellant, and, if not, whether the appellant has shown any resultant prejudice which denied him his constitutional guarantee of a fair trial.

After the trial court had orally analyzed the evidence and announced its decision, the court said: "The reporter if necessary will write up the court's findings and decision."

Can the ministerial act of the formal entry of written findings, required by this procedural rule, be waived? We think it can. Constitutional guarantees such as the right to trial by jury and the right to counsel can be waived. *In re Summers v. Rhay,* 67 Wn.2d 898, 410 P.2d 608 (1966); *In re Snyder v. Maxwell,* 66 Wn.2d 115, 401 P.2d 349 (1965); *State v. Lane,* 40 Wn.2d 734, 246 P.2d 474 (1952). A plea of guilty constitutes a waiver of all defenses. *In re Summers v. Rhay, supra; State v. Sawyer,* 62 Wn.2d 1, 380 P.2d 726 (1963). Specific statutory provisions can be waived. *Boettcher v. Busse,* 45 Wn.2d 579, 277 P.2d 368, 49 A.L.R.2d 191 (1954); *Johnson v. Peterson,* 43 Wn.2d 816, 264 P.2d 237 (1953); *Miller v. O'Brien,* 17 Wn.2d 753, 137 P.2d 525 (1943).

We conclude that, if such important constitutional rights and statutory provisions can be waived, a provision in a court rule requiring the ministerial act of the formal entry of written findings can likewise be knowingly and intentionally waived. The court directed that the findings be reduced to writing if either party deemed them necessary. The appellant did not request that written findings be pre-

pared, and therefore waived the requirement of the rule.

■ Assuming, arguendo, that the formal entry of written findings was not intentionally waived, the appellant has not shown wherein he was prejudiced or denied a fair trial by the absence of written findings. The trial court admitted appellant's statements into evidence, based upon a pretrial hearing in which it had determined that the statements were spontaneously and voluntarily made. The record before us sustains the *fact* that they were spontaneous and voluntary admissions, and it is this *fact* that makes the statements admissible in evidence, rather than the formal entry of written findings.

Appellant further contends that his statements were involuntary due to his alleged intoxication at the time of the homicide. The issue of intoxication, as it may or may not have affected the voluntariness of the witness' statements, was considered by the trial court at the pretrial hearing, and rejected.

We find no merit in appellant's first assignment of error.

Appellant's second assignment of error is that the court failed to administer the proper oath to the jury.

When the jury was selected and its members were sworn, the part of the oath reported is as follows:

THE CLERK: . . . try the issue joined and, and deliverance made between the State of Washington and Eldridge Shelby that you have in charge according to the law and evidence given at the trial.

RCW 10.49.100 provides:

The jury shall be sworn or affirmed well and truly to try the issue between the state and the defendant, according to the evidence, and in capital cases to well and truly try, and true deliverance make between the state and the prisoner at the bar whom they shall have in charge, according to the evidence.

The discrepancy in the oath given was promptly called to the court's attention by the deputy prosecuting attorney. In the absence of the jury, the court stated to counsel for the appellant: " . . . if there is any question in your mind as to whether or not you are waiving it, we will have

the jury resworn." To this statement, appellant's counsel replied:

> Well, I don't plan to waive anything in relation to the matter. On the other hand, I am not requesting that they be resworn, and *I doubt very much if there is any right that has been encroached upon by the giving of this oath.* On the other hand, if there is, then I think that we would be entitled to a mistrial at this stage of the game, because the readministration of the oath then would be an overemphasis of the oath. I feel that we might then be—have a position to take, but at this stage of the game I just don't feel—*I have not moved for a new trial or a mistrial based on the administration of the oath.* I am aware of the facts that the oath has been given and what the oath is, and I am making no motion. But, on the other hand, I am not waiving any—(Italics ours.)

> The court did not readminister the oath to the jury.

In *State v. Biondic,* 47 Wn.2d 593, 599, 288 P.2d 845 (1955), in discussing RCW 10.49.100, this court stated:

> We now hold that the words, "and a true verdict render," which were incorporated in the oath given to the jury when it was first sworn to try the case, is the equivalent of the "true deliverance make" called for by the statute in capital cases. See Black's Law Dictionary (4th ed.) 515, where "deliverance" is defined; "In practice. The verdict rendered by a jury"; and 26 C. J. S. 696: "Deliverance. . . . Technically, in practice, the verdict rendered by a jury." This holding makes it unnecessary to pass upon the effect of reswearing the jury.

The statutory words which should have been incorporated in the oath are "well and truly to try the issue between the state and the defendant, according to the evidence." The words of the oath actually given were to "try the issue joined and, and deliverance made between the State of Washington and Eldridge Shelby that you have in charge according to the law and evidence given at the trial."

Although the proper statutory oath should have been given to the jury, the appellant has not shown wherein he was prejudiced by the oath as given, which required that the verdict be predicated upon the law and the evidence presented at the trial.

We find no merit in appellant's second assignment of error.

Appellant next assigns error to the court's sustaining an objection to his cross-examination of Mary Ann Grabinski. Appellant contends that the witness had given conflicting answers concerning various events in connection with the homicide, and that the court erred in sustaining an objection to the following question: "Will you tell us what happened, who came in, and what happened?" In sustaining the objection, the court ruled:

> The answer has been in the course of cross-examination you have elicited other aspects of it, and you may pursue those other aspects. . . . But the objection was made to asking her to repeat where she was, who was there in its entirety, and this has been gone over three times. I am sustaining the objection to that.

The record shows that the witness had described the events in question three times. The court granted the appellant the right to pursue the specific area of the alleged conflict. Appellant's right to cross-examine the witness was not unduly restricted.

Appellant's third assignment of error is without merit.

Appellant's fourth assignment of error is directed to the trial court's granting the state leave to endorse the name of Curtis Lyckman as an additional witness during the course of the trial, over appellant's timely objection.

RCW 10.37.030 requires the parties to file a list of the names of persons each intends to call as witnesses. The purpose of the statute is to eliminate surprise and afford time to interview the witnesses. The court, in its discretion, may permit the state to endorse the name of an additional witness during the course of the trial, where no prejudice will result to the defendant. *State v. Williford,* 64 Wn.2d 787, 394 P.2d 371 (1964); *State v. Thompson,* 59 Wn.2d 837, 370 P.2d 964 (1962).

At the time the motion was made, the attorney for the state informed the court and the appellant of the name of the witness and the nature of the testimony he was expected to give. The appellant's attorney was given the

telephone number and address of the witness. In allowing the state to endorse the witness, the court informed the appellant that he was entitled to interview the witness prior to his appearance in court, and that "If you will not have sufficient time to talk to him and to interview him, then his appearance on the stand will be deferred until such time as you have had an opportunity to fully do so." The court later asked the appellant if he had had an opportunity to interview the witness, and the appellant replied that he had.

We find no merit in appellant's fourth assignment of error.

Appellant next alleges that the court erred in admitting the testimony of Curtis Lyckman, contending that it was hearsay and did not fall within the res gestae exception.

Mr. Lyckman testified that Andrew Zavada, the state's principal witness, "came running" into a cafe and tavern which was located two blocks from the scene of the homicide, and made several statements to the effect that the appellant had just killed Williams. Mr. Lyckman testified that Mr. Zavada had been running and "was out of breath and real shook up," when he said to Mr. Lyckman: "You had better go help Tars [Williams]. I think Bob [appellant] just killed him." This statement was made to Mr. Lyckman within 10 minutes after Mr. Zavada had witnessed the homicide.

In *McCandless v. Inland Northwest Film Serv.*, 64 Wn.2d 523, 392 P.2d 613 (1964), we again approved the six essential elements of the res gestae exception to the hearsay rule which were adopted in *Beck v. Dye*, 200 Wash. 1, 9, 92 P.2d 1113, 127 A.L.R. 1022 (1939), as follows:

(1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of pre-

meditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation, and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

Every element of the exception to the hearsay rule is here present. The court did not err in admitting the testimony upon the ground that it fell within the res gestae exception to the hearsay rule.

Finally, appellant contends that the court erred in admitting in evidence the bloodstained shirt of the decedent and the bloodstained trousers and shoes of the appellant. In this regard, appellant contends that the exhibits had no probative value, were cumulative, and "could serve to do nothing other than inflame and prejudice the jury."

■ We do not agree. These exhibits were necessary, *inter alia*, to establish that the blood found on the appellant's clothing was the same type as that of the decedent. ". . . Competent evidence is not prejudicial just because it is gruesome." *State v. Farley*, 48 Wn.2d 11, 19, 290 P.2d 987 (1955), and cases cited.

We find no merit in any of appellant's assignments of error. The appellant in all respects was afforded a fair trial.

The judgment and sentence is affirmed.

ROSELLINI, C. J., FINLEY and HALE, JJ., and RUMMEL, J. Pro Tem., concur.

---

November 9, 1966. Petition for rehearing denied.