[Nos. 38949, 39734.    Department Two.    December 28, 1967.]

THE STATE OF WASHINGTON, *Respondent,* v. CECIL ANDREW PINKERTON, *Appellant.*

*In the Matter of the Application for a Writ of Habeas Corpus of* CECIL ANDREW PINKERTON, *Petitioner,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.**

*Reported in 435 P.2d 661.

*Smith, Scott & Morthland,* by *Fred L. Stewart* (appointed counsel for appeal), and *Cecil Pinkerton,* pro se, for appellant.

*Lincoln E. Shropshire* and *Donald R. Shaw,* for respondent.

HUNTER, J.—This is an appeal from the conviction of the defendant (appellant), Cecil A. Pinkerton, of second-degree burglary, in the Superior Court for Yakima County. Defendant presents similar issues in his petition for a writ of habeas corpus, which we will consider at the conclusion of our disposition of this appeal. We summarize the facts as follows.

On a Sunday, at about 6 a.m., September 6, 1965, Maxine Long, owner of the Plaza Hotel on North First Street in Yakima, while looking from a rear window of the hotel, saw a car drive down the alley and park in the rear of the Shamrock Tavern. She observed two men in the car whom she afterwards identified as Rudy Garrison and defendant Pinkerton. She saw Pinkerton get out of the car and walk around toward the front of the tavern, and later come out of the rear with two cases of beer which he handed to Garrison, who placed them in the trunk of the car. Pinkerton returned to the tavern. By this time an employee of the hotel, Danny Hill, had joined Maxine Long and they both observed Pinkerton again emerge from the rear door of the tavern with two more cases of beer which were also placed in the car trunk by Garrison.

The activities of the two men, and the license number of their car, were promptly reported to a policeman, Officer Nye, who was parked in his patrol car around the corner from the hotel. When he arrived at the alley, the officer saw Garrison and the defendant driving away, and he followed them. After four or five blocks, he stopped their vehicle because it had defective taillights. Upon questioning Garrison, who was driving, the officer discovered that Garrison had neither a driver's license nor evidence of registra-

tion. He then issued Garrison three citations and advised him and the defendant that the car would be impounded.

At the trial, Officer Nye testified that he asked and received permission from Garrison to look into the trunk. This was denied by both Garrison and Pinkerton. The search revealed four cases of Olympia beer.

Garrison and Pinkerton then left their car on foot but were arrested by another police officer shortly thereafter, when it had been learned that the Shamrock Tavern had been broken into and burglarized.

The record discloses that the front door of the tavern had been forced open. The money container of the juke box had been pried off, and an attempt had been made to pry open the metallic blue cigarette machine. Eight cases of Olympia beer, two half gallons of Old Smiley wine, an extension cord, and one-half case of Camel cigarettes were reported by the tavern owner as missing.

Officer Nye, at the time he stopped Garrison and Pinkerton, had observed two metal tent stakes on the floorboard of the car beneath Pinkerton's legs. One of these stakes, it developed at the trial, bore traces of blue paint similar in color to the cigarette machine in the tavern.

A search of Pinkerton's hotel room, authorized by him that morning, resulted in the discovery of two bottles of Old Smiley wine.

The defendant assigns error to the introduction in evidence of the items found in the car on the ground that they were the product of an unlawful search. This contention is without merit.

We are concerned only with the officer's investigation of the contents of the car trunk at the time Garrison and the defendant had been halted for the traffic violations. The later search and seizure of the items in the car, after the car had been impounded and after Garrison and the defendant had been arrested for burglary, is not attacked on this appeal. The record persuades us, however, that the later search and seizure was incident to a lawful arrest. See *State v. Wilson*, 70 Wn.2d 638, 424 P.2d 650 (1967).

■ There is credible evidence in the record that Garrison, the driver, consented to the officer's opening the trunk of the car. Pinkerton contends that the consent for the search given by Garrison was not binding on him and that Garrison could not have authorized the search. This objection is groundless. Garrison had control and dominion of the car and his consent, under the circumstances, was sufficient. See *Johnson v. United States,* 358 F.2d 139 (5th Cir. 1966); *United States v. Eldridge,* 302 F.2d 463 (4th Cir. 1962); *United States v. White,* 268 F. Supp. 998 (D.D.C. 1966).

■ The defendant contends that the two bottles of Old Smiley wine were improperly admitted in evidence. This contention is also without merit. The record shows that Pinkerton expressly consented to the search of his room which produced this evidence. In any event, no objection was made at the trial to the introduction of these exhibits, and this failure to object precludes defendant from raising the alleged error on appeal. *State v. Silvers,* 70 Wn.2d 430, 432, 423 P.2d 539 (1967), and cases cited therein.

The defendant also contends that testimony of an officer concerning statements made to him by Pinkerton during an interrogation at the police station was a denial of due process under *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602 (1966). The record shows that the defendant took the witness stand, and that, in rebuttal, for the purpose of showing certain prior contradictory statements of the defendant, the state presented the officer, who testified as follows regarding his interrogation of Pinkerton shortly after the arrest.

After advising him of his constitutional rights, the officer asked the defendant if he wanted to use the phone to call a lawyer. The defendant declined, stating that he had no money to employ a lawyer and that he would let the court appoint a lawyer for him. The interrogation continued until the defendant decided that he would decline to answer any further questions; whereupon the officer halted the questioning.

■ The interrogation and trial took place prior to *Miranda, supra*. For that reason, the rules announced in that decision respecting police interrogations did not apply to the questioning here at issue. *Johnson v. New Jersey*, 384 U.S. 719, 16 L. Ed. 2d 882, 86 Sup. Ct. 1772 (1966). The defendant in this case knew that he was entitled to remain silent and to have a lawyer and still he made no objection to further interrogation. Further, he made no incriminating statements, and the interrogation was terminated at his request. In the light of these circumstances, we find no denial of due process involved in admitting the challenged testimony.

The defendant contends that the trial court was without jurisdiction to proceed with the trial when a juror was excused for illness after the trial had begun.

On the first day of the trial, the state had presented two witnesses who testified for about 30 minutes prior to the noon recess. When court resumed after lunch, the judge was informed that juror No. 9 had become ill, had been sent to the hospital, and would probably not be able to return. Counsel for both sides were called before the bench. The judge stated that the alternatives were either to (1) select a new jury, or (2) choose a replacement juror and read him the testimony of the first two witnesses, in the absence of the other members of the jury, before proceeding with the trial. This alternative procedure was thoroughly discussed and considered by the defendant and his counsel and by the attorney representing the state. It was stipulated that the second alternative was agreeable to the parties and that the trial should proceed on this basis. It is the argument of the defendant however, that the court could not consent to such a stipulation, since the procedure adopted is not authorized by statute.

■ We are satisfied that, in the instant case, there was an intelligent, knowing, and independent waiver by the defendant of his right to a jury trial other than by the procedure here followed. We have held that parties may consent to trial by a jury of less than 12. *State v. Lane*, 40

Wn.2d 734, 246 P.2d 474 (1952). We believe the reasoning of that case is applicable here. The matters stipulated to in this case go to the manner and form of trial rather than to the jurisdiction of the court. See *State v. Forza,* 70 Wn.2d 69, 422 P.2d 475 (1967); *State v. Shelby,* 69 Wn.2d 295, 418 P.2d 246 (1966); *State v. Tharp,* 42 Wn.2d 494, 256 P.2d 482 (1953); *State v. Lane, supra.*

We are satisfied that the defendant had a fair trial. The judgment of guilty entered upon the jury verdict is affirmed.

The issues raised by the defendant's petition for habeas corpus in cause No. 39734 are included in those considered upon this appeal, which we deem dispositive of this petition with one exception.

The defendant in his petition asserts that his rights were violated because he was not taken promptly before a magistrate and not promptly charged. There is no merit to this contention. The record shows he was arrested on September 5, 1965; that the information was filed on September 8, 1965, and that he was arraigned on September 9, 1965, at which time he was afforded court-appointed counsel. We find no semblance of prejudicial delay in the filing of charges and arraignment of the defendant under these circumstances. The petitioner's application for a writ of habeas corpus is denied.

FINLEY, C. J., DONWORTH and HAMILTON, JJ., and OTT, J. Pro Tem., concur.

---

February 8, 1968. Petition for rehearing denied.