[No. 39856.   Department Two.   October 9, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES EARL BIBLE, *Appellant*.*

*William Merchant Pease*, for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Jeff A. Morris*, for respondent.

McGOVERN, J.—The appellant (defendant), James Earl Bible, was charged jointly with his brother, Harold Lee Bible and Charles Fortson, with the crime of robbery. All were found guilty as charged and judgment and sentence was entered upon the jury verdict. James Earl Bible appeals independently.

Shortly after midnight on March 21, 1967, the three defendants hailed a taxicab driven by Francis D. Gordon, in downtown Seattle. James Bible was seated to the right in the rear seat with his brother Harold to his left. Charles Fortson was in the front seat next to the cab driver. They asked to be taken to the High Point area of Seattle. Enroute they requested the cab driver to stop at a store so they could get some cigarettes. The driver stopped at Nifty's Cafe about 12:30 a.m. The three went into the restaurant and came back in a few minutes, taking the same seats

*Reported in 459 P.2d 646.

in the cab they had occupied before. After proceeding south on 35th Street S.W. toward High Point, the cab driver was told to turn onto a side street where he stopped after the statement, "This will be okay here."

Upon the turning on of the dome light in the cab, Charles Fortson, in the front seat, at knife point, ordered the cab driver to produce his wallet. Harold Bible, directly behind the driver, gave "a metallic pointed jab" into the neck of the driver. The driver handed his wallet to Fortson, who passed it to one of the two in the back seat. The cab driver was then directed by Fortson to stay where he was for 5 minutes, or in Fortson's words, "I'll blow your head off." All three defendants then ran from the cab in a westerly direction.

The cab driver immediately radioed his dispatcher. The police were rushed to the area where they promptly apprehended Fortson and Harold Bible. Both men were easily identified by the cab driver because Fortson had a goatee, and Harold Bible was wearing a turban. As the apprehended men were being placed in separate prowler cars, the defendant James Bible walked up to the prowler cars and asked what was going on. The police officers asked what his interest was and he replied, "That's my brother you have in the back of the patrol car," while pointing to Harold Bible. Upon further inquiry by the officers he stated his name and said he was 19 years of age. The police officers noticed a strong odor of alcohol on defendant's breath and immediately placed him under arrest for "minor consuming."

The cab driver identified the defendant thereafter at a police lineup as one of the three in his cab at the time of the robbery. The cashier at Nifty's Cafe also identified the defendant as one of the three men who entered the premises shortly before the time the robbery was committed.

This appeal follows the entry of judgment and sentence upon the jury verdict.

The defendant first contends there is insufficient evidence to support the entry of a judgment and sentence for robbery against him. He argues on appeal that he was a victim

of circumstances, caught in a situation over which he had no control by the spur-of-the-moment decision of his older brother Harold, and the older Charles Fortson, to commit the robbery. He contends that evidence of his participation in the robbery does not go beyond mere suspicion or probability and is therefore insufficient to warrant his conviction.

This contention is without merit in view of the entire record. The defendant James Bible entered the cab with the other defendants; he accompanied them into the restaurant for cigarettes and returned with the defendants to the cab. He was present when the robbery was committed and fled with his brother and Fortson after the cab driver was warned by Fortson to stay for 5 minutes or he would blow his head off.

The jury was entitled to conclude from this evidence that the defendant's unexplained conduct was not that of an innocent man, and that his very presence in the cab was of assistance in the commission of the crime.

The defendant further contends that he was denied a fair trial because he was represented by the same attorney who represented his brother. He argues that the joint representation created a conflict of interest and that he was thereby denied the benefit of effective counsel. He urges that the principle stated in *Glasser v. United States*, 315 U.S. 60, 70, 86 L. Ed. 680, 62 S. Ct. 457 (1942) that "The assistance of counsel guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests" was violated and that he is therefore entitled to a new trial. He points out that a new trial was ordered in *Lollar v. United States*, 376 F.2d 243, 244 (D.C. Cir. 1967) under similar conditions when the court said: *"Glasser* and numerous cases following it have established the rule that, where a defendant has been prejudiced as a result of having to share his attorney with another defendant and he has not waived his objections thereto, he must be granted a new trial."

While we agree with the general principles laid down in *Glasser* and *Lollar,* we find that they are not applicable to

the case at hand. The facts in those cases and here are totally at variance. In *Glasser* the court appointed the defendant's retained counsel to also represent a codefendant, while openly acknowledging that such appointment would be favorable to that codefendant. Even though counsel there pointed out to the court that there would be some inconsistency in the defenses of the two defendants and even though the defendant Glasser personally voiced his objection to the appointment, the appointment was made anyway.

The *Lollar* facts are equally dissimilar. There the court found that although the signs of prejudice resulting from one counsel representing both defendants were not very strong, nonetheless they were sufficiently clear to lead the court to conclude that defendant Lollar "may have been actually prejudiced."

In the instant case, defendant Bible never asked for separate counsel; he never registered dissatisfaction with his counsel; he never indicated in any manner, shape or form, that he had a defense inimical to the position taken by his codefendant brother. In fact, he clearly demonstrated otherwise. When the court, in defendant's presence, asked his counsel if there was anything inconsistent in the defenses of the brothers Bible, and counsel answered "No, your Honor," defendant said nothing. His fanciful defense sprang into being only after he was convicted. If joint representation was then as harmful as is now claimed, the trial court should have been so advised when it inquired on the subject.

Whereas in both *Glasser* and *Lollar* the court found that one attorney represented inimical interests, we are unable to find that a conflict existed here. Although the defendant generally alleges that his interests were in conflict with those of his brother, he has never indicated in what respect that is so. We are unable to do it for him.

We affirm.

HUNTER, C. J., HILL and FINLEY, JJ., and OTT, J. Pro Tem., concur.