[No. 43531. En Banc. February 5, 1976.]

THE STATE OF WASHINGTON, *Respondent,* v. BRUCE KEITH MYERS, *Appellant.*

*John A. Strait*, for appellant.

*Christopher T. Bayley, Prosecuting Attorney*, and *Michael P. Ruark, Senior Deputy*, for respondent.

HUNTER, J.—The appellant (defendant), Bruce Keith Myers, appeals from a robbery conviction in a nonjury trial. On March 27, 1973, the trial judge imposed a 5-year deferred sentence and put the appellant on probation. At the conclusion of a probation revocation hearing held on

February 21, 1974, the trial judge revoked appellant's probation, and entered judgment sentencing him to the Department of Institutions. In addition to his robbery conviction, appellant also appeals the decision rendered in the probation revocation hearing.

The events that led to appellant's robbery conviction took place on the night of November 29, 1972. Appellant and James Adwell, who was appellant's codefendant in the trial below, had spent most of the day together and were in a Seattle cocktail lounge. While at the bar, appellant Myers attempted to converse with one Albert Dahl, who was the robbery victim. Dahl ignored Myers and left the bar after paying his bill. The appellant and Adwell followed him out.

According to Dahl, he accepted a ride to his apartment with the appellant and Adwell. Dahl said he sat in the middle of the front seat between the driver Adwell and the passenger Myers, and upon arriving at the apartment parking lot, he exited the car from the driver's side. As he walked around the car, he was struck on the back of the head and knocked to the ground. He did not see who hit him and his assailant began kicking him once he was on the ground. A voice near the car threatened him, telling him that his assailant had a knife. When the voice inquired about his wallet, the assailant took it and returned to the car. The robbers then drove away.

Dahl contacted the police, a description of the car and the men was broadcast, and shortly thereafter the police picked up Myers and Adwell. Dahl's wallet and social security card were found on the person of appellant. The police also found a credit card belonging to Dahl in the glove compartment of the car.

Both the appellant and Adwell gave statements to the police. Adwell said that the appellant had jumped out of the car and assaulted Dahl when they arrived at the parking lot. Adwell's version of the events had him breaking up the fracas. He stated that he did not know that appellant had taken Dahl's wallet until sometime later when they were back in the car and had left the parking lot.

In his statement, Myers said that he had attacked Dahl only because Dahl had made an offensive grab for him as Dahl left the car. Appellant stated that this conduct by Dahl made him very angry and that his anger was the reason he hit and kicked Dahl. Appellant said that he had no intention of taking the wallet but merely happened to pick it up during the assault when he saw it on the ground.

At the trial, the appellant based his defense on a theory of diminished capacity, contending that the use of alcohol and drugs, along with an underlying psychiatric condition, prevented formation of a specific intent to rob the victim. The appellant maintained that he had no recollection of either the robbery or his subsequent statement to the police. Adwell, the codefendant, relied on his statement to the police that he had broken up the assault but knew nothing about the robbery until sometime later.

Appellant's first contention is that he was denied his constitutional right to confront and cross-examine witnesses because both he and his codefendant, Adwell, shared the same court-appointed counsel. He argues that the joint representation prevented effective confrontation and cross-examination since the attorney was, in effect, forced to represent conflicting interests. We disagree.

The right of cross-examination is guaranteed by the confrontation clause of the sixth amendment to the United States Constitution. *See Bruton v. United States*, 391 U.S. 123, 126, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968); *Barber v. Page*, 390 U.S. 719, 721, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968); *Pointer v. Texas*, 380 U.S. 400, 404, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965). In *Bruton v. United States, supra*, the codefendant refused to take the witness stand at trial after the introduction into evidence of his pretrial statement, which seriously implicated the defendant. The Supreme Court held that the right to confrontation was denied thereby because the defendant thus was unable to cross-examine his codefendant. *See Bruton v. United States, supra* at 127-28; *see, e.g., State v. Craig*, 82 Wn.2d 777, 788, 514 P.2d 151 (1973); *State v. Braun*, 82 Wn.2d 157, 163, 509

P.2d 742 (1973). The crucial factor in the right to confrontation of witnesses is the prevention of cross-examination that occurs when a codefendant whose statement has been introduced into evidence refuses to take the stand. *See California v. Green,* 399 U.S. 149, 153, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970).

In the present case both the appellant and his codefendant Adwell testified at the trial. The appellant therefore was not denied his right to confront and cross-examine the witnesses against him. *See State v. McIntyre,* 3 Wn. App. 799, 803, 478 P.2d 265 (1970). In addition, the substance of codefendant Adwell's statement directly implicated the appellant in only the assault and not the robbery. In fact, Adwell maintained in his statement that he knew nothing at all about the wallet until after he and appellant had left the scene of the incident. Because the statement of Adwell was not incriminatory on its face with respect to the robbery, there is no reason to apply the principles of *Bruton v. United States, supra,* even if Adwell had not testified at the trial. *See State v. Ferguson,* 3 Wn. App. 898, 905, 479 P.2d 114 (1970), citing *State v. Gibson,* 3 Wn. App. 596, 601, 476 P.2d 727 (1970). Moreover, independent of the statement of Adwell, there was substantial evidence of appellant's guilt, including appellant's own incriminating statement, and thus the protections established in *Bruton v. United States, supra,* were not required. *See State v. Todd,* 78 Wn.2d 362, 368, 474 P.2d 542 (1970), citing *State v. Aiken,* 75 Wn.2d 421, 452 P.2d 232 (1969). Consequently, we hold that *Bruton* does not apply to the facts of this case. Appellant's constitutional right to confront and cross-examine witnesses was not denied because he shared court-appointed counsel with his codefendant.

Appellant's second contention with regard to the trial is that he was denied his constitutional right to the effective assistance of counsel. Like the issue discussed above, this argument is based on the fact that the same court-appointed counsel represented both the appellant and his codefendant. Appellant asserts that his interests con-

flicted with those of his codefendant Adwell, and, as a result, he was denied the effective assistance of counsel to his prejudice. We do not agree.

The right to effective assistance of counsel is a fundamental one, guaranteed by the sixth amendment to the United States Constitution. In the absence of a clear waiver, the right to effective assistance of counsel requires assistance that is unimpaired by the simultaneous representation of conflicting interests. *See Glasser v. United States*, 315 U.S. 60, 69, 86 L. Ed. 680, 62 S. Ct. 457 (1942); *State v. Bible*, 77 Wn.2d 69, 71, 459 P.2d 646 (1969). It is well established, however, that there must be some prejudice to a defendant before a denial of the effective assistance of counsel based on joint representation will be found. *Lollar v. United States*, 376 F.2d 243, 246 (D.C. Cir. 1967). The test for determining whether a defendant has been denied the effective assistance of counsel is as follows: " 'After considering the *entire record*, can it be said that the accused was afforded an *effective representation* and a *fair* and *impartial* trial?' " *State v. Johnson*, 74 Wn.2d 567, 570, 445 P.2d 726 (1968), quoting *State v. Thomas*, 71 Wn.2d 470, 471, 429 P.2d 231 (1967). *See State v. Kennedy*, 8 Wn. App. 633, 638, 508 P.2d 1386 (1973). Applying this standard to the facts of the present case, we find there is nothing in the record indicating even a possibility that the appellant may have been actually prejudiced because he and his codefendant, Adwell, shared the same court-appointed attorney. The defense theories of the appellant and Adwell were totally compatible—they did not conflict in any way whatsoever.

Appellant asserts that his possible total innocence was never explored because it would have required cross-examination of Adwell with respect to his participation in the robbery, *i.e.*, an attack on codefendant Adwell's statement that he had no knowledge of the robbery. Appellant contends that this conflict prevented counsel from pursuing this approach and thereby prejudiced his case. A review of the record, however, shows that on the contrary, the failure

of defense counsel to cross-examine the codefendant Adwell as to the extent of his participation in the robbery was not possibly prejudicial to Myers. His suggestion that such an attack on his codefendant's defense could have helped shift the blame from appellant is without merit because he, in effect, admitted the physical acts that constitute the crime of robbery when he based his defense on an absence of the requisite intent. Adwell's participation or nonparticipation in the robbery could have no effect on the question of appellant's guilt. We do not see how the destruction of Adwell's defense via cross-examination would have altered the facts and circumstances giving rise to the case against the appellant. Consequently, we hold, under the rules stated above, that sharing a court-appointed counsel denied the appellant in this case neither a fair and impartial trial nor his right to the effective assistance of counsel.

The third and last contention of appellant in regard to his trial concerns the admission into evidence of the pretrial incriminating statements made to the police by the appellant and Adwell. The appellant argues that he was denied due process when the trial court accepted the statements without adequate foundation as to their voluntariness and without compliance with CrR 101.20W (now CrR 3.5).

■ ■ Criminal rule 101.20W (CrR 3.5) is Washington's confession procedure rule. Its basic purpose is to provide a uniform procedure for the admission of voluntary confessions (as well as other custodial statements, *see State v. Jones*, 65 Wn.2d 449, 455, 397 P.2d 815 (1964)) in a fashion that will prevent the jury from hearing an involuntary confession. The rule's significant impact is that the trial judge resolves the issue of voluntariness in the absence of the jury and thus obviates the due process problems that would arise where the jury hears an involuntary confession. *See Jackson v. Denno*, 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774, 1 A.L.R.3d 1205 (1964); *State v. Lopez*, 67 Wn.2d 185, 188, 406 P.2d 941 (1965); *State v. Taplin*, 66 Wn.2d 687, 690, 404 P.2d 469 (1965). The rule is mandatory, but under proper circumstances the right to a voluntariness

hearing and the other requirements of the rule, such as the formal entry of written findings, can be waived. *See State v. Woods*, 3 Wn. App. 691, 697, 477 P.2d 182 (1970); *compare State. v. Taplin, supra* at 691, *with State v. Shelby*, 69 Wn.2d 295, 300, 418 P.2d 246 (1966); *State v. Toliver*, 6 Wn. App. 531, 534, 494 P.2d 514 (1972). In addition, it is possible to conduct the required voluntariness hearing in conjunction with the trial itself rather than prior to the commencement of the trial. *See State v. Haverty*, 3 Wn. App. 495, 498, 475 P.2d 887 (1970).

In the present case the court, sitting without a jury, did not conduct a formal CrR 101.20W hearing. The issue specifically came up during the trial, however, and both defendants were advised of their rights under the rule. At that time they both indicated a desire to defer any testimony about the voluntariness of their custodial statements until later in the trial during the regular presentation of their cases. Counsel for appellant and codefendant Adwell agreed to the admission into evidence of the statements on the issue of voluntariness subject to further evidence on the issue. There was no further evidence, however, because Adwell made absolutely no reference in his later testimony to the circumstances surrounding his statement and the appellant testified that he could not remember making his statement at all. The trial judge did not make any findings on the question of whether the statements were voluntarily made, and no formal written findings were otherwise made. The appellant contends that under these circumstances and in light of the requirements of CrR 101.20W, the case should be remanded for a determination of whether the statements in question were made voluntarily. We do not agree.

The facts in this case support the conclusion that the appellant knowingly, intelligently, and voluntarily waived his right to a voluntariness hearing. Even constitutional rights can be waived by conduct, *see In re Smith*, 85 Wn.2d 738, 741, 539 P.2d 83 (1975), and the conduct of appellant in this case was clearly sufficient to constitute an effective

waiver. The trial court informed the appellant and his co-defendant of their right to a voluntariness hearing and both acknowledged their rights. They voluntarily decided, however, not to testify then as to the circumstances surrounding the taking of their custodial statements. Instead, they indicated that such testimony would be part of their regular testimony. Both appellant and his codefendant testified in their respective defenses, but neither made any further comment about the custodial statements. In fact, the appellant denied any recollection at all of both the robbery and the circumstances surrounding his statement to the police. No objection was made to the trial court's failure to hold a formal CrR 101.20W hearing. In this situation, there can be little doubt that the appellant effectively waived his rights under CrR 101.20W. *See State v. Woods, supra* at 697. Moreover, there was absolutely no evidence to indicate that the statements were not voluntary. We assume that appellant would not change his trial testimony upon remand and now remember the circumstances surrounding his statement. Therefore, a remand for a voluntariness hearing and the formal entry of findings would be an idle and useless procedure. *See State v. Lopez, supra* at 189.

The appellant further argues with respect to his custodial statement that there was insufficient evidence to support compliance with the standards of *Miranda v. Arizona*, 384 U.S. 436, 438, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), in regard to waiver of the right against self-incrimination. This contention is without merit. The record shows very clearly that a standard police procedure was used with both appellant and his codefendant Adwell. Pursuant to this procedure they were informed in writing of their *Miranda* rights and each signed to indicate their understanding and waiver of the same. The police officer who testified at trial described in detail the procedure used by the police and the written warnings and signed waivers were before the court. The evidence was more than sufficient to support the conclusion that appellant made a voluntary, knowing, and intelligent waiver of his constitu-

tional right against self-incrimination. *See State v. Emmett,* 77 Wn.2d 520, 522, 463 P.2d 609 (1970); *State v. Cashaw,* 4 Wn. App. 243, 248, 480 P.2d 528 (1971). Under these circumstances, it is not critical that the testimony of a corroborating witness was not produced at trial. *Cf. State v. Erho,* 77 Wn.2d 553, 558, 463 P.2d 779 (1970).

We are satisfied the appellant had a fair trial. We therefore affirm his conviction for robbery as determined by the trial court.

The second challenge raised by appellant in his appeal relates to the validity of the probation revocation hearing at which he was sentenced to the Department of Institutions. The appellant asserts that he was denied due process on several grounds. We disagree.

The appellant was arrested pursuant to a bench warrant issued on January 25, 1974. He was given notice of the hearing, including notice of specific probation violations, on February 15, 1974. The revocation hearing itself was held on February 21, 1974. At the conclusion of the hearing, appellant's probation was revoked for the following violations of his probation conditions: Failure to maintain full-time schooling or employment; failure to continue with an alcohol treatment program; failure to have weekly psychiatric counseling with reports submitted to the probation officer; failure to obey all laws, and use of alcohol.

There can be no doubt that probation revocation hearings require minimum due process. *See Gagnon v. Scarpelli,* 411 U.S. 778, 786, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 484-89, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). The question in the present case is whether the hearing below afforded appellant his due process rights under the applicable standards.

 Appellant first argues that the failure to conduct a "preliminary hearing" was a denial of due process. This argument is without merit because in this case the final revocation hearing itself was held within 30 days after the arrest warrant was issued. The possible time lag between the original detention after a probation violation and the

final determination on revocation that justifies requiring at least some minimal inquiry into whether the alleged violations actually occurred is not present in this case. *See Morrissey v. Brewer, supra* at 486. As long as the final determination on revocation is promptly held, there is no need for a "preliminary hearing." *See People v. Calais,* 37 Cal. App. 3d 898, 902, 112 Cal. Rptr. 685 (1974); *Moore v. Stamps,* 507 S.W.2d 939, 950 (Mo. App. 1974). Appellant received a prompt determination at the probation revocation hearing itself and, consequently, he was not denied due process. *See also Gerstein v. Pugh,* 420 U.S. 103, 119, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975).

■ Appellant's second argument is that he was denied due process by the failure of the judge at the revocation hearing to make written findings of fact. This contention, however, does not stand scrutiny because the judge's oral opinion, transcribed in the statement of facts, provides an ample record of the evidence on which the judge relied and the reasons for the revocation. *See Blake v. United States,* 372 F. Supp. 186, 190 (M.D. Fla. 1973), *aff'd per curiam,* 489 F.2d 1402 (5th Cir. 1974); *People v. Scott,* 34 Cal. App. 3d 702, 708, 110 Cal. Rptr. 402 (1973). Thus, the absence of specific written findings did not hinder appellant in making his appeal since the oral opinion provided a record sufficient for review. *See Heikkinen v. Hansen,* 57 Wn.2d 840, 844, 360 P.2d 147 (1961). A remand for the purpose of entering formal written findings would serve no useful purpose. *See State v. Sonneland,* 80 Wn.2d 343, 350, 494 P.2d 469 (1972). Under these circumstances, the failure to enter written findings of fact did not result in a denial of appellant's due process rights. *See Dickson v. United States Fidelity & Guar. Co.,* 77 Wn.2d 785, 791, 466 P.2d 515 (1970); *Andersen v. Andersen,* 75 Wn.2d 779, 782 n.1, 453 P.2d 856 (1969); *Todd v. Superior Court,* 68 Wn.2d 587, 592, 414 P.2d 605 (1966).

The remainder of appellant's arguments concern the reasons why the judge at the revocation hearing found that appellant had violated the conditions of his probation. Basi-

cally, appellant contends he was denied due process on three grounds: First, because some of the reasons given in the judge's oral opinion were not contained in the notice of the hearing that was given appellant; second, because the reasons were not supported by substantial evidence; and third, because one of the alleged violations was based on an unconstitutional city ordinance. Lastly, appellant argues that the trial judge's apparent reliance on any of the above improper reasons for revocation resulted in a denial of due process.

■ Appellant is correct in stating that the notice of violations furnished to him did not include several of the reasons for revocation discussed by the judge in his subsequent oral opinion.[1] These included appellant's failure to maintain either full-time employment or schooling, appellant's failure to continue with an alcohol treatment program, and appellant's failure to commence weekly psychiatric counseling with regular reports submitted to the probation officer. Each of these situations, however, came into the case without objection from the appellant or as a result of appellant's own testimony or questioning by appellant's counsel. Moreover, as this evidence and testimony were introduced, appellant did not request a continuance in order to develop explanations or obtain further evidence. Appellant did not claim surprise and, in fact, acquiesced throughout the hearing in the development of evidence relating to treatment programs and his participation therein,

---

[1] The "Notice of Hearing and Petition for Revocation of Probation" alleged the following violations of appellant's probation conditions:

"(1) Defendant furnished liquor to a 16 yr. old minor female on August 14, 1973, in Olympia, Washington. (2) Defendant consumed intoxicants on or about November 10, 1973; (3) Defendant ingested a controlled substance, without having a doctor's prescription, to wit: 15 to 20 valium tablets on or about November 10, 1973, in Olympia, Washington. (4) Defendant was found guilty of Prowling and Evincing unlawful conduct in the Olympia Municipal Court on December 13, 1973. (5) Defendant was convicted again of Prowling & Evincing unlawful conduct in the Olympia Municipal Court on January 7, 1974 and was sentenced to 10 days in jail suspended. (6) Defendant consumed intoxicants on or about January 5, 1974 in Olympia, Washington, contrary to the order of the court."

presumably because he felt that the evidence was helpful to his position. Under these circumstances lack of formal written notice did not deny appellant his due process rights. *See, e.g., State v. Johnson,* 18 Ariz. App. 474, 476, 503 P.2d 829 (1972); *Rainwater v. State,* 127 Ga. App. 406, 193 S.E.2d 889 (1972); *Haiflich v. State,* 285 So. 2d 57 (Fla. App. 1973); *cf. United States v. Huff,* 512 F.2d 66 (5th Cir. 1975).

█ Appellant's suggestion that the reasons given for his probation revocation were not based on substantial evidence is not supported by the record. All of the trial judge's reasons for revoking probation, that is, violations relating to full-time employment, continuing psychiatric counseling, continuing alcohol treatment, use of alcohol, and violation of laws, are adequately substantiated by the record. The evidence is more than sufficient to meet the requisite burden of proof and to find that the judge was "reasonably satisfied" that the appellant had violated the conditions of his probation. *See Standlee v. Smith,* 83 Wn.2d 405, 408, 518 P.2d 721 (1974); *State v. Kuhn,* 81 Wn.2d 648, 650, 503 P.2d 1061 (1972).

█ Appellant's final argument relates to the fact that the city prowling ordinance under which he was found guilty is not constitutional, *see Bellevue v. Miller,* 85 Wn.2d 539, 547, 536 P.2d 603 (1975), and therefore cannot properly be used to justify revocation. *See Seattle v. Grundy,* 86 Wn.2d 49, 541 P.2d 994 (1975). Appellant argues that his revocation cannot be sustained because the trial judge may have relied on this improper ground in reaching the decision to revoke probation. *Cf. Clay v. United States,* 403 U.S. 698, 29 L. Ed. 2d 810, 91 S. Ct. 2068 (1971); *Stromberg v. California,* 283 U.S. 359, 367, 75 L. Ed. 1117, 51 S. Ct. 532, 73 A.L.R. 1484 (1931). These cases and the principle for which they stand are not applicable, however, because in the present case the oral opinion specifies the reasons for the revocation decision. The judge did not render a general verdict or fail to state the grounds upon which he relied. Violation of laws was only one of many reasons given in

432

the oral opinion stating why appellant's probation was revoked. In fact, there was substantial evidence that appellant had violated other laws in addition to his prowling convictions. The prowling convictions were insignificant in comparison to the other probation violations and therefore it is inconceivable that they were determinative in any way. Moreover, it is clear from the oral opinion that the judge placed heavy reliance on the other grounds, all of which were proper. Consequently, the unconstitutionality of the prowling ordinances in question does not require us to reverse the revocation decision. We conclude that appellant was not denied due process in the probation revocation hearing.

The trial court's disposition of this case is affirmed in all respects.

STAFFORD, C.J., and FINLEY, ROSELLINI, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

Petition for rehearing denied April 15, 1976.