[No. 40083.   Department One.   December 26, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT
LEONARD BOOTH, *Appellant*.*

*Parr, Baker, Alexander & Cordes*, by *Gerry L. Alexander*, for appellant (appointed counsel for appeal).

*Byron E. McClanahan*, for respondent.

GAINES, J.†—The appellant was tried and found guilty by a jury of the crime of murder in the first degree for killing his ex-wife, Sally Booth.

The assignments of error involve the admission of oral statements or confessions made by appellant shortly after his arrest, the admission of an unsigned written statement, taken from appellant the evening following his arrest without a hearing on its voluntariness under CrR 101.20W and the failure of the trial court to instruct the jury as to the weight and credibility of the oral confession.

*Reported in 449 P.2d 107.

†Judge Gaines is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

The appellant, a logger, became the fourth husband of Sally Booth, a cook, in December of 1960. Both appellant and his ex-wife were hard drinkers and given to loud arguing in public. Appellant said drinking and arguing were more or less a way of life with both of them. They were well known in the bars of Shelton and frequently came to the attention of the Shelton peace officers. Mrs. Booth was granted a divorce from appellant about 3 weeks before her death, although she and appellant had continued living together, except for a 3 week period of separation.

Since appellant raises the question of his sobriety on the night his wife was killed, it should be pointed out that on September 23, 1963, both the appellant and his ex-wife were seen drinking in several bars. Mrs. Booth was heard arguing with appellant in a loud voice, frequently using obscenities toward him and saying she didn't want him following her around anymore. While appellant had done considerable drinking that day and evening, none of the witnesses who saw him considered him drunk.

About 12:30 a.m. of September 24, 1963, appellant drove to the Cota Grill and announced to Josephine Weddle, a bartender, and two other witnesses there that he wanted a "double", that he had shot his wife. He asked Miss Weddle to call the police, which she did. Appellant had another "double" before his brother, Officer Dick Booth of the Shelton Police Department, came and asked appellant what his trouble was. Appellant said, "I shot the old lady." Miss Weddle did not think appellant was drunk; he did not stagger and his speech was all right. Officer Booth, who arrested his brother did not think he was drunk, and later testified that "He talked just as rational as anybody I had ever talked to."

After appellant's arrest, Shelton police officers, including appellant's brother, went to the Booth apartment where Mrs. Booth's body was found in her bed with the sheet pulled up around the front and lower part of her face. When the sheet was pulled back blood was seen from above her left shoulder to the left side of her head and coming

from the right corner of her mouth and ears. Appellant's single shot .22 calibre rifle was leaning against the door-jamb and contained one used cartridge.

When the officers returned from examining the deceased's apartment, appellant was brought from the drunk tank to the chief's office and his rights were explained to him. He said that he would not give a written statement but wanted to talk. Appellant then told how he killed his ex-wife with his .22 calibre rifle while she was in bed. During the course of this conversation, about 3:09 a.m., appellant took a breathalizer test which registered .16.

The following evening Deputy Sheriff Wallace F. Anderson of Mason County, told appellant he would like to take a statement. He advised appellant that he did not have to give a statement, that it could be used against him, and also advised him of his rights to contact an attorney. Appellant willingly gave Mr. Anderson a statement but would not sign it. This unsigned statement to Mr. Anderson differed in some respects from admissions made earlier to the Shelton police.

When the prosecution proposed to introduce evidence of appellant's oral statements to the officers made shortly after his arrest, the court on its own motion held a hearing pursuant to CrR 101.20W out of the presence of the jury. The state introduced testimony as to the circumstances under which it was taken. The appellant offered no evidence on this subject.

At the conclusion of the hearing the court summarized the evidence:

THE COURT: I have a factual question before me here. In view of the state of the record and the testimony here, I can do nothing but find: That the undisputed facts are that during an interrogation of the Defendant in the early morning of September 24, 1963, with Officers Baumgart, Santamaria and Clark present, later the Coroner-Prosecutor Mr. McClanahan for a short period of time, I find it to be an undisputed fact that the Defendant was advised that he could remain silent. was not required to talk, that what he said could be used against him and that he was entitled to counsel, to a lawyer, before he

made any statement if that was his wish. I find the undisputed fact to be that Defendant did not request counsel and indicated that he did not want any at that time.

I find as an additional undisputed fact that he was readily willing to talk, but that he would not care to sign a written statement that evening, but that he would do so later that day or at a later time.

Number two, I am required to recite the disputed facts, and I am not aware of any at this stage of the record. Do counsel suggest any that are disputed?

Mr. RAGAN: Well, the question as to sobriety I think, the circumstances that have been brought out in the testimony as to whether he had been drinking.

THE COURT: I think there is a disputed fact as to whether or not he was intoxicated to the point where it would be unfair to talk to him. On that disputed fact I am forced to find that he was not, that he had been drinking but was not drunk at least. I find that there were no threats, force or threats of force, or any conduct on the part of the officers that would lead to fear on the part of the Defendant, other than that there is naturally a little closer intimacy in a small office with a number of people present than it would be if it were a larger one. I find no evidence of any promises, or inducements. I am led to the conclusion inescapably that the confession, if that is what it turns out to be, was voluntary and is therefore admissible, and that will be the Court's ruling.

Of course, when it comes in, the Defendant is still privileged to go into the circumstances under which these conversations were had before the Jury, not for the question of admissibility, of course, that has already been determined, but as these circumstances may have a bearing on the weight that the Jury would see fit to give the confession.

There will be no restriction as far as cross-examination regarding the circumstances under which these conversations were had.

The record supports the court's conclusions and we find no error in the admissions of the appellant's oral confession.

The unsigned written statement taken by Mr. Anderson, the deputy sheriff, was identified and admitted in evidence

over the single objection of appellant's counsel that he thought the officer's testimony as to what was said would be the best evidence.

Appellant elected to take the stand as a witness in his own behalf during his case and testified to the effect that Mrs. Booth was accidentally killed during an argument when he was trying to take the gun away from her after she had threatened to kill herself. On cross-examination appellant admitted making the statement to Deputy Sheriff Anderson, but said he would not sign it because it was not true. Asked why he changed his story appellant testified:

> Well, at the time I told Officer Anderson that story I fully intended to plead guilty to any charge that they wanted to bring. I suffered a great shock with the death of my wife, my ex-wife, and I didn't want to stand trial on this case. One reason, my reputation. I didn't have money to hire an attorney. And to state the fact kind of bluntly, I didn't have much faith in a court-appointed attorney. I didn't believe that a court-appointed attorney would be willing to put in the time and effort it would take to present a case like this.

Appellant said he changed his story several weeks later.

■ Appellant urges in his second assignment of error that the unsigned written statement he gave to Deputy Sheriff Anderson should not have been admitted in evidence because no hearing on its admissibility had been conducted pursuant to the provisions of CrR 101.20W. It is true that at the hearing under the rule, references were all to oral statements to the Shelton police and the statement to Mr. Anderson was not discussed. However, the court carefully explained to appellant his rights under the rule and Mr. Anderson again advised him of his constitutional rights before taking the statement. Further, when the appellant took the stand on his own behalf he did not question the language of the warning contained in the statement, nor the fairness of the circumstances under which it was taken. He claimed that he gave an untrue statement because he had planned to plead guilty. It thus appears that the appellant himself has eliminated any question that

the written statement was not his free and voluntary act made with a full understanding of all of his rights. Here all the facts and inferences to be drawn therefrom are present. This is not a case requiring reference back to the trial court to conduct further collateral hearings to determine the voluntariness of the confession under the rule of *Jackson v. Denno,* 378 U.S. 368, 12 L. Ed. 2d 908, 84 Sup. Ct. 1774 (1964); *State v. Taplin,* 66 Wn.2d 687, 404 P.2d 469 (1965). It is rather like the case of *State v. Lopez,* 67 Wn.2d 185, 188, 406 P.2d 941 (1965), where it was pointed out that:

> By reason of the fact that, under the record in this case, there can be no issue with respect to the voluntariness of the defendant's confession, we determine that his rights under neither the provision of the Fifth Amendment nor under the due process clause of the Fourteenth Amendment were in any way violated.

It should be borne in mind that the instant case was tried in January, 1964 before the impact of *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1602 (1966). We conclude in this case that appellant's assignment of error in not holding a further hearing concerning the written statement to Deputy Sheriff Anderson is not well taken.

In appellant's third assignment of error he contends that the trial court failed to instruct the jury as to the weight and credibility of the oral confession. This exception is without merit because at no time did the appellant claim his statement was involuntary nor did he request the court to instruct the jury on this subject. *See State v. Taplin, supra.*

In his supplemental reply brief appellant raises for the first time the contention that the verdict was contrary to the evidence because appellant was so intoxicated he could not form a specific intent. However, his contention is without merit as the record contains abundant evidence to the contrary.

The judgment and sentence is affirmed.

HILL, WEAVER, HALE, and McGOVERN, JJ., concur.

February 24, 1969. Petition for rehearing denied.