[No. 3214–2. Division Two. September 6, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. TERRY LANE VANDIVER, *Appellant.*

*Richard M. Carlson,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *James Parkins, Deputy,* for respondent.

REED, A.C.J.—Defendant Terry Lane Vandiver appeals his conviction of second–degree assault, RCW 9.11.020(4).[1] We affirm.

---

[1]RCW 9.11.020(4) was repealed effective July 1, 1976. See RCW 9A.36-.020(1)(c) for present statute.

The following are the undisputed facts. On July 18, 1975, Christine Vandiver, defendant's wife, was permitted by Michael A. Schelin, her ex–husband, to visit their son at a day care center near Moab Junction in Spokane. She arrived at the center at approximately 3:30 p.m.; Schelin was also present. Shortly thereafter, defendant stopped at the center with another individual and parked his vehicle at an angle which blocked Schelin's exit. When Schelin approached defendant's vehicle, the two men began to argue. Defendant left the center after Schelin told Christine that he would not permit her to visit the boy if defendant did not leave.

According to Schelin he left the center with his son 20 minutes after speaking with defendant. He maintains that he immediately was "ambushed" by defendant, and that he only managed to elude defendant after a high speed chase. Finally, Schelin asserts that during this chase, he glanced in his rear view mirror and saw defendant fire a rifle shot in his direction. The shot did not strike Schelin's vehicle. In any event, Schelin succeeded in getting home without further trouble and immediately reported the incident to the sheriff.

The next day defendant was arrested by Detectives Gasper and Laws of the Spokane Sheriff's Department. After waiving his *Miranda* rights, defendant told the officers that he had been in the Moab Junction area during the previous evening, but stated that no shooting had occurred.

Defendant was charged with second–degree assault and tried on September 29, 1975. Although a pretrial hearing was held to determine the admissibility of some of defendant's allegedly inculpatory statements, the comments made to the arresting officer were not discussed. At trial, the State called Schelin, who told the jury his version of the incident. Gerry Riddle also testified; he stated that a bullet fired by an unknown person struck his vehicle while he was driving in the Moab Junction area during the late afternoon of July 8. Several other witnesses also described this incident, but none of them could identify the assailant.

Defendant took the stand in his own defense. He admitted to speaking with Schelin at the day care center, but maintained that he drove home after stopping at a nearby grocery store. Defendant also stated that he did drive through Moab Junction sometime between 5:30 and 6 p.m. on the evening of the incident; however, he vehemently denied firing any shots. Christine Vandiver corroborated her husband's testimony and asserted that defendant was home by 4:15 p.m.

Defendant was found guilty and appeals.

Defendant first contends that the trial court erred in admitting his statement to the arresting officer because the circumstances surrounding the making of such statements had not been scrutinized in a pretrial voluntariness hearing. *See* CrR 3.5. Defendant does not claim that the statements were not voluntarily given after proper admonishment; he merely asserts that absence of a voluntariness determination concerning these particular statements renders them inadmissible per se. We do not agree.

■ As stated in *State v. Toliver,* 6 Wn. App. 531, 534, 494 P.2d 514 (1972):

> While the provisions of CrR 101.20W [the predecessor to CrR 3.5] are mandatory, *State v. Shelby,* 69 Wn.2d 295, 418 P.2d 246 (1966); *State v. Taplin,* 66 Wn.2d 687, 404 P.2d 469 (1965), statements which would be otherwise admissible do not become inadmissible solely because a CrR 101.20W hearing was not held. *State v. Baker,* 68 Wn.2d 517, 413 P.2d 965 (1966). If a review of the record discloses that there can be no issue concerning voluntariness, rights have not been violated by failure to hold such a hearing. *State v. Booth,* 75 Wn.2d 92, 449 P.2d 107 (1968); *State v. Lopez, supra* [67 Wn.2d 185, 406 P.2d 941 (1965)].

*See also State v. Myers,* 86 Wn.2d 419, 545 P.2d 538 (1976); *State v. Falk,* 17 Wn. App. 905, 567 P.2d 235 (1977).

Our examination of the record discloses absolutely no indication that these statements were not voluntarily made after defendant was properly advised of his constitutional rights. We therefore find that defendant was not prejudiced

by the trial court's failure to review these statements in the 3.5 hearing and hold that it was not error to permit Detective Gasper to testify at trial regarding his conversation with defendant.[2]

On cross–examination of Gerry Riddle, Riddle was asked if he was acquainted with defendant. He answered that he had "seen him before"; after further inquiry by defense counsel, Riddle stated that he had been "in a jury trial" about a year ago in which defendant was tried for burglary. Evidence of defendant's prior criminal record was also presented to the jury during defense counsel's cross–examination of Officer Gasper. The officer was asked if he arrested defendant pursuant to an arrest warrant. Officer Gasper replied that he had not procured a warrant but merely had received permission from defendant's parole officer. No objection was made to either of these statements and defendant did not request the court to instruct the jury to disregard this information.

On appeal, defendant contends that the admission of these statements, in effect, forced him to take the stand in violation of his rights under the fifth amendment to the United States Constitution and article 1, section 9 of the Washington State Constitution.

■ Initially we note that we are here dealing with error "invited" by trial counsel, not counsel on appeal. The statements made by Riddle and Officer Gasper were both in response to questions asked by defense counsel. Such self–invited error generally precludes appellate review. *State v. Lewis*, 15 Wn. App. 172, 548 P.2d 587 (1976); *cf. State v. Ingels*, 4 Wn.2d 676, 104 P.2d 944 (1940) (defendant cannot complain about information elicited on cross–examination when subject was opened on direct).

---

[2]Defendant also contends that admission of these statements forced him to take the stand and testify against himself. This contention is clearly without merit. *See State v. Van Auken*, 77 Wn.2d 136, 460 P.2d 277 (1969) and discussion of defendant's argument regarding evidence of prior crimes, below.

■ Although not required to do so, we will briefly discuss the merits of defendant's arguments. Defendant contends that because the jury was presented with evidence of uncharged crimes, he was forced to take the stand in order to present an adequate defense of his case.[3] We are not convinced by defendant's argument. The constitutional right against self–incrimination is designed to protect a criminal defendant from being forced to testify against his will. *State v. Van Auken,* 77 Wn.2d 136, 460 P.2d 277 (1969); *State v. Jeane,* 35 Wn.2d 423, 213 P.2d 633 (1950). This protection is not related to the question of the admissibility of allegedly improper, but clearly noncompelled evidence. *State v. Van Auken, supra; State v. Moore,* 60 Wn.2d 144, 372 P.2d 536 (1962). In the absence of proof of actual compulsion, a challenge to evidence on Fifth Amendment grounds is inappropriate. As stated by the *Van Auken* court at page 138:

> To hold otherwise could create the incongruous result that the state could not introduce otherwise valid evidence simply because defendants might feel a need to take the stand and contradict or explain it.

We see no basis for reversing defendant's conviction on self–incrimination grounds.

We now reach defendant's third and final assignment or error. He argues that instruction No. 9 violates his right to due process by creating an impermissible presumption. *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975); *State v. Roberts,* 88 Wn.2d 337, 562 P.2d 1259 (1977); *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976). Instruction No. 9 provided:

> The law presumes that every man intends the natural and probable consequences of his own acts. Where it takes a particular intent to constitute a crime that intent must be proved to the satisfaction of the jury. It does not require direct or positive proof but the circumstances

---

[3]Defendant is correct in asserting that, with certain exceptions, evidence of unrelated crimes is inadmissible in a criminal trial. *See State v. Mack,* 80 Wn.2d 19, 490 P.2d 1303 (1971); *State v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950).

must be such as would authorize the jury to infer the intent with which the act was done.

■ In order to obtain a conviction under RCW 9.11-.020(4), the prosecution must establish that defendant willfully assaulted Schelin with a weapon or "other instrument likely to produce bodily harm." In instruction No. 7 the court stated that the term willfully means "intentionally and purposefully."[4] Instruction No. 4 read:

> If a person willfully assaults another with a weapon or other instrument or thing likely to produce bodily harm, he is guilty of the crime of assault in the second degree, whether or not he entertained a design or intent to cause such bodily harm the gist of the offense is the intentional attack with a weapon which might cause such harm, and whether or not the attacker intended or thought of the harm which might result is not material.

See *State v. Stewart*, 73 Wn.2d 701, 440 P.2d 815 (1968). It is clear that the "particular intent" referred to in instruction No. 9 is the requirement that the jury find that defendant acted with the purpose of assaulting the victim. To obtain a conviction, it was not necessary for the State to prove that defendant intended to cause any particular, proscribed result. *State v. Louther*, 22 Wn.2d 497, 156 P.2d 672 (1945). Nonetheless, we will examine instruction No. 9 in order to insure that it does not offend defendant's right to due process.

■ In *Roberts*, the Supreme Court set forth a threefold test for determining the constitutionality of an evidentiary presumption in a criminal case: (1) the presumption must not shift the ultimate burden of persuasion to the defendant; (2) the presumption may only be used to establish an element of the offense when the fact presumed follows from the underlying facts beyond a reasonable doubt; and

---

[4]Under prior case law, the trial court's definition of "willfully" was correct. *State v. Stewart*, 73 Wn.2d 701, 440 P.2d 815 (1968); *State v. Spino*, 61 Wn.2d 246, 377 P.2d 868 (1963). RCW 9A.08.010, which became effective on July 1, 1976, however, changed the definition. RCW 9A.08.010(4) provides in part: "A requirement that an offense be committed wilfully is satisfied if a person acts knowingly . . ."

(3) the jury must be informed that the presumption is permissive, and not mandatory. *See also State v. Odom,* 83 Wn.2d 541, 520 P.2d 152 (1974); *State v. Alcantara,* 87 Wn.2d 393, 552 P.2d 1049 (1976).

Defendant's argument that the presumption violates the first *Roberts* requirement is without merit. The language of instruction No. 9 simply does not shift the burden of persuasion to the defendant; any argument to the contrary borders on the frivolous.

█ We are also convinced that the presumed fact— intent to assault—can be found to flow from proof of the physical act beyond a reasonable doubt. As stated in *State v. Roberts, supra* at 343:

> In determining whether or not [a] presumption meets this test, the court may utilize common experience, as well as empirical data and evidence which establishes a factual basis for the presumption.

*See also State v. Kroll, supra* at 844; W. LaFave & A. Scott, *Criminal Law* § 28 (1972); 21 Am. Jur. 2d *Criminal Law* § 82 (1965).

Finally, we find that the third prong of the *Roberts* test was satisfied. The second sentence of instruction No. 9 is sufficient to inform the jury of the nonconclusive nature of the presumption. In addition, we note that the jury was given both a general burden of proof instruction and was specifically instructed that the prosecution was required to prove *intent* beyond all reasonable doubt. *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978).

Although we find that instruction No. 9 raises no constitutional issues, we are not convinced that use of this type of instruction is wise. If specific intent is not an element of the crime, there is no need to inform the jury that an individual is presumed to intend the natural consequences of his act. In cases where intent is an element, we suggest that an instruction which is phrased in terms of an inference from

circumstantial evidence would be more appropriate.[5] 11 Wash. Prac. § 6.25, comment (1977); cf. *State v. Shelton*, 71 Wn.2d 838, 431 P.2d 201 (1967) (intent may be established by examining all the facts and circumstances of the case; *State v. St. Peter*, 63 Wn.2d 495, 387 P.2d 937 (1963)).

Judgment affirmed.

PETRIE and SOULE, JJ., concur.

Petition for rehearing denied September 21, 1978.

Review denied by Supreme Court January 19, 1979.

---

[5]We note a more complete, and therefore preferable, instruction utilizing this presumption was approved in another context in *State v. Kroll*, 87 Wn.2d 829, 558 P.2d 173 (1976) which, in dictum, invalidated the second–degree murder presumption later found wanting in *State v. Roberts*, 88 Wn.2d 337, 562 P.2d 1259 (1977).