# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 71519-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| DOREEN STARRISH, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 27, 2015 |

SPEARMAN, C.J. — Doreen Starrish was convicted of second degree felony murder and possession of heroin when witnesses saw her stab her former significant other during a heated argument. Starrish moved for a mistrial, arguing that a police detective gave improper opinion testimony about witness truthfulness (1) in general and (2) with regard to a particular witness. The motion was denied and Starrish appeals, claiming she was denied her right to a fair trial. Starrish also objected to "to convict" instructions as violating her Sixth Amendment right to a jury trial. We find no error and affirm.

## FACTS

Doreen Starrish and Aaron Smith met in 2000 as teenagers and had a volatile relationship. The couple had two daughters and continued to live together through 2012, even though they had ceased being romantically involved. In May of that year, Starrish was dating Jonathon Jones. Another couple was also staying in the house, Dianne Berniard and Reginald Tramble.

On May 3, 2012, Smith was preparing breakfast and getting their daughters ready for school. Berniard and Tramble were sleeping on the sofa in the living room. Starrish had come back to the house with Jones and they went into her bedroom. Smith became upset, opened the door, called Starrish a name, and closed the door again. Smith opened the door again and yelled at Starrish, making her angry. Starrish came out about fifteen minutes later and claimed that Smith took her stuff. Starrish then grabbed a knife and advanced on Smith. Smith took the knife away and threw it aside. Starrish grabbed a second knife and stabbed Smith in the chest. Starrish and Jones left, while Smith collapsed and Tramble and Berniard called the police. Smith was taken to Harborview hospital where he died a few days later from a stab wound that penetrated his heart.

Starrish was charged with second degree felony murder by assault and possession of heroin. One of the police detectives, Mike Mellis, testified about an interview he had with Tramble. Mellis described the sense of urgency with which he needed to get answers from Tramble, because there were children involved, and it wasn't certain whether Smith would survive. He explained to Tramble that there were multiple possible outcomes — if Smith did survive, it's possible that he might not want to press charges. Id. at 10-19. If he did, however, the result would be a full-blown investigation, and he would be required to cooperate. Id. Mellis reminded Tramble that "in the end, you know, in court, everybody ends up telling the truth," and he used that as his theme to encourage Tramble to tell him what he had seen. Verbatim Report of Proceedings (VRP) (11/20/13) at 216. On cross examination, Mellis was asked whether he had found, in his experiences,

2

that everyone does tell the truth in court. Mellis admitted that when he was questioning Tramble, he "was left with the impression that [he] was not getting all of the truth out of [him]." Id. at 226.

The next day Starrish moved for a mistrial based on Mellis's opinions about witness truthfulness in general and about Tramble's truthfulness. The trial court denied the motion after asking Starrish's counsel whether he thought that he "play[ed] a role in eliciting the testimony and how [he] pose[d] the questions to that detective in terms of asking him about truthfulness, and the whole scope of his interrogation of this individual?" Id. at 3.

Over Starrish's objection, the trial court instructed the jury that it had a "duty" to convict if it found that each of the elements of the crimes had been proved beyond a reasonable doubt. VRP (11/13/13) at 92. The jury returned a verdict of guilty on all counts.

## DISCUSSION

Starrish argues that the admission of Mellis's opinion testimony that "in court, everybody ends up telling the truth" and that Tramble was initially not being completely truthful, violated her constitutional right to a jury trial. VRP (11/20/13) at 216. According to her, Mellis's testimony was improper vouching, especially because his testimony "carrie[d] an 'aura of reliability'" due to his status as an officer. Br. of Appellant at 12; citing State v. Demery, 144 Wn.2d 753, 765, 30 P.3d 1278 (2001). The State argues that Starrish is barred from raising this issue on appeal under the doctrine of invited error, because Starrish now objects to the answers that she elicited on cross examination.

3

We review a trial court's decision to deny a new trial for an abuse of discretion; the trial court, "'having seen and heard' the proceedings, 'is in a better position to evaluate and adjudge than can we from a cold, printed record.'" State v. Perez-Valdez, 172 Wn.2d 808, 819, 265 P.3d 853 (2011), quoting State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221(2006). An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court. State v. Castellanos, 132 Wn.2d 94, 97, 935 P.2d 1353 (1997). A trial court's denial of a motion for mistrial "will be overturned only when there is a 'substantial likelihood' the prejudice affected the jury's verdict." State v. Russell, 125 Wn.2d 24, 85, 882 P.2d 747 (1994).

CrR 7.5 states that

[t]he court on motion of a defendant may grant a new trial for any one of the following causes when it affirmatively appears that a substantial right of the defendant was materially affected:

. . . .
　　(5) Irregularity in the proceedings of the court, jury or prosecution, or any order of court, or abuse of discretion, by which the defendant was prevented from having a fair trial;

A mistrial should be granted "only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." State v. Johnson, 124 Wn.2d 57, 76, 873 P.2d 514 (1994)

In this case the claimed irregularities consist of Mellis's two statements about the veracity of witnesses testifying at trial in general and about Tramble in particular. A witness's expression of personal belief about the veracity of another witness is inappropriate opinion testimony in criminal trials. State v. Montgomery,

163 Wn.2d 577, 591, 183 P.3d 267 (2008). Admission of such testimony may be reversible error. Demery, 144 Wn.2d at 759.

We need not determine whether Mellis's statements amount to improper opinion testimony or irregularities that rise to the level of warranting a mistrial. Even if they were improper, the doctrine of invited error precludes review. Invited error bars review because a party cannot set up an error at trial and then complain on appeal. State v. Henderson, 114 Wn.2d 867, 870, 792 P.2d 514 (1990). This prohibition applies even to constitutional issues. Id.

In response to a question about whether he used any particular strategies or techniques to interview Tramble, Mellis testified on direct examination as follows:

> In this case, I wanted him to know we did have a time crunch with the children, so I was pressuring him to give what he knew quickly because of that element. At that time, nobody knew whether the victim, or the person who was stabbed, was going to survive or not, so I certainly used that as a theme, or a way of trying to bring out a truthful statement from him, letting him know there is different scenarios that could happen. If the person survived, heck, maybe that guy wouldn't even want to press charges against whoever stabbed him. If he died, though, clearly, there was going to be a full force, full-on investigation going forward and he had to cooperate. I told him, in the end, you know, "I have been around the block." He mentioned that he had kind of been on the street for a while, in a way, and that he knew — or I encouraged him to recall that, in the end, you know, in court, everybody ends up telling the truth, was my theme with him. So there was several themes going forward in talking to him.

VRP (11/20/13) at 216. Mellis was then asked specifically on cross-examination whether it was true if "everyone who comes in court tells the truth." Id. (11/20/13) at 222.

Q. Right. Okay. You made a statement during your direct testimony that -- that in the end, everyone who comes in court tells the truth. That's not true, is it?

A. No, not always, no.

Q. Well, many people come to court and perjure themselves? It happens; right?

A. Is that a question?

Q. Yes.

A. Your definition of "many" might be different than mine. People have perjured themselves in court, yes.

Q. Right. So I guess that was one of your tactics to get them to talk to you, you had an emergency; right? You had these kids, this Amber Alert, you had to get answers really quickly; right?

A. I had to get answers accurately out of Mr. Tramble, yes.

Q. All right. And there was a sense of urgency?

A. There was.

Q. Okay. And so, you know, I'm not criticizing you, it was just a tactic to use to tell him that, in the end, everybody is going to tell the truth in court?

A. Yes.

Q. But you know that that's not true?

A. Well, in my experience, sir, when a witness -- I'm not talk about suspects here, but a witness, ultimately, the significant event that they witnessed, it is my experience that, you know, if you are not involved in the crime, whether you are a hard-core gangster -- this is the message I was giving him, whether you are a hard-core gangster or a witness on the street, in the end, everybody tells the truth in court.

Q. That's your experience, in the end, everybody tells the truth?

A. The significant witnesses, sir, that's my experience.

Q. Everybody. That's -- and that's been your – how long have you been a detective?

A. A long time, sir.

Q. When is the last time you had a witness who lied in court that you are aware of?

A. I'm not sure, sir.

Id. at 222-24. Mellis was then asked about whether or not Tramble changed his

story. The transcript reads:

Q. Right, he changed his story a number of different ways, didn't he?

A. No, not -- again, that's a vague term, I don't know, if he changed his subject, he changed his story a

couple different times on specific events that I asked
him about.
Q. Okay. He told you that it happened outside, he said
that it was a verbal argument that happened outside;
right?
A. I'm sorry, he said --
Q. I'm asking you, don't you remember if he said there
was a verbal argument, that happened outside; right?
A. Yes.
Q. Okay. And that wasn't true, or was it? You don't
know?
A. I was left with the impression that I was not getting
all of the truth out of Mr. Tramble, that's certainly
true.

Id. (11/20/13) at 226.

Although, Mellis testified on direct examination to the effect that everybody ends up testifying truthfully in court, he also testified that the statement was used as a tactic to get the witness to open up and give a complete statement. Thus, Mellis was not testifying as to his opinion, but instead about an interrogation tactic that he used on the witness. To the extent Mellis offered his personal opinion about whether witnesses always testify truthfully and about whether Tramble was being truthful during his interview, this testimony was elicited on cross examination by defense counsel. As such it is invited error and not subject to review on appeal. See State v. Vandiver, 21 Wn. App. 269, 273, 584 P.2d 978 (1978) (testimony elicited on cross examination was invited error precluding appeal). The trial court did not err in denying Starrish's motion for a mistrial.

Starrish next argues that the language in the jury instructions about the jury's "duty to convict" violates her rights to a fair trial under Washington Constitution, art. I, sec. 21. She argues that the instruction misstates the law

7

because it does not inform the jury of the power that it has to deliver a verdict of acquittal even if it is against the clear weight of the evidence. Jury instructions 8 and 22 informed the jury that:

> "If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. . . .
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty. . . ." CP at 100.

The State argues that this phrase is included in every to convict instruction, and has been previously challenged multiple times and has been upheld as constitutional in every instance. We agree with the State. This is ground that has been well traveled.[1] In State v. Meggyesey, 90 Wn. App. 693, 700, 958 P.2d 319 (1998), *abrogated on other grounds by* State v. Recuenco, 154 Wn.2d 156, 110 P.3d 188 (2005), this court addressed arguments against the use of the duty to convict instruction and upheld it as a correct statement of law. Starrish tries to distinguish Meggyesy by arguing that the error is not that the jury was not told of its ability to deliver a verdict of acquittal, but that it was misled into believing that it lacked that power to acquit against the evidence. We thought we had driven the final nail into these arguments, including Starrish's contention that the instruction "misstates the law" and "affirmatively mis[leads] the jury," when we decided State v. Moore, 179 Wn. App. 464, 468-69, 318 P.3d 296 review denied, 180 Wn.2d 1019, 327 P.3d 55 (2014). The to convict instruction

---

[1] Upon being asked by Starrish's counsel whether it had had the opportunity to read the briefing on this argument, the trial court indicated that it had already "seen it about 15 times – from various attorneys." VRP (11/13/13) at 92.

given in Starrish's trial was a correct statement of law and did not violate Starrish's right to a jury trial under the Washington Constitution.

In her statement of additional grounds, Starrish claims that she received ineffective assistance of counsel because her attorney failed to object to the State's introduction of photographic evidence that showed a bloody pillow that she claimed was staged and foil and heroin that allegedly did not belong to her. She also objected to counsel's failure to insist that the bags and foil be tested for fingerprints.

We review claims of ineffective assistance of counsel de novo. In re Pers. Restraint of Gomez, 180 Wn.2d 337, 347, 325 P.3d 142 (2014). Representation is deemed constitutionally sufficient unless (1) considering all the circumstances, the attorney's performance was below objective standards of reasonableness, and (2) with reasonable probability, the outcome would have differed if the attorney had performed adequately. State v. Stenson, 132 Wn.2d 668, 705-06, 940 P.2d 1239 (1997). There is a strong presumption that a defendant received effective representation and the defendant must show that there were no legitimate strategic or tactical rationales for the challenged conduct. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). The defendant must also show that he or she was prejudiced by the error, i.e., there is a reasonable probability that but for counsel's error, the trial outcome would have been different. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Absent a contrary showing, we presume that defense counsel provided effective representation. First, Starrish argues that counsel's performance was

deficient because neither the foil and baggie nor the blood from the pillow were tested for fingerprints. Starrish does not indicate where in the record the foil and baggie were introduced as evidence. In the trial brief, Starrish's counsel moved to exclude any reference to any use or sale of drugs by Starrish, and "what [the witness] **assumed** were her drugs." CP at 54. The pillow appears in Exh. 13, Photograph 53, which depicted "the master bedroom, and ... a pillow that was on the bed in the master bedroom, and it confined [sic] what we believe were blood smears." VRP (11/18/13) 131.

Starrish makes no argument why the failure to object was not a tactical decision. On the contrary, the record shows that the absence of testing was argued as part of Starrish's trial strategy. In closing argument, Starrish's counsel mentioned the bag of heroin and asked the jury, "[n]ow you would think, I don't know, but I would think you would check it for fingerprints. Check it for DNA. Wouldn't that help to determine who was possessing that? But no, that didn't happen. So once again, it was half the truth." VRP 12/5/13 at 52. Her attorney then asked, "[w]hat about the blood on the pillow. When you look at the photos, they are in evidence, you will see photos of Doreen's bedroom. . . . You will see her pillow with blood on it. I asked him why didn't you test that? Maybe they'd find her blood. But that doesn't help their case. So, why bother." Id. at 52-53. Starrish has not shown that there was no legitimate tactical or strategic rationale for her counsel's decision to leave the evidence untested.

Starrish also alleges that there was insufficient evidence to support the verdict, but argues only that the jury should have given greater weight to

10

conflicting evidence in the record. Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the State, a rational fact trier could have found the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). An appellate court defers to the trier of fact on all "issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004) abrogated by State v. Hankerson, No. 70727-8-I, 2015 WL 3852945 (June 22, 2015) (citing State v. Cord, 103 Wn.2d 361, 367, 693 P.2d 81 (1985)). This court does not reweigh evidence and substitute its judgment for that of the trier-of-fact. Accordingly, we affirm the trial court's judgment.

Affirmed.

Spearman, C.J.

WE CONCUR:

Appelwick, J.

Cox, J.