# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>KAVAHN ELIJAH MATTHEWS-SMITH, QIANTRE JAMIEL TAYLOR, AKA QIUAN-TRE JAMIEL DAEVION TAYLOR, AKA QIUAN-TRE JAMIEL DAZ TAYLOR, EARNETRA SHALIA TURNER,<br><br>Defendants,<br><br>and<br><br>RODNEY LEE WILLIS,<br><br>Appellant. | No. 73903-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: July 24, 2017 |

TRICKEY, A.C.J. — Rodney Willis appeals his conviction for first degree murder. He argues that the trial court erred when it allowed the lead detective in his case, Detective Christina Bartlett, to give her opinion on his guilt while testifying. Willis also contends that the trial court abused its discretion by denying his motion for a new trial after he learned that jurors had observed Detective Bartlett's facial expressions as she sat at the State's counsel table throughout the trial.

Because we conclude that Willis invited any error in eliciting Detective Bartlett's testimony and that the record does not establish that her facial expressions amounted to a serious trial irregularity, we affirm.

## FACTS

In September 2012, Herman Tucker died from a gunshot wound to the chest at a Motel 6. There is no dispute that Willis shot Tucker, although Willis claims it was accidental.

The State charged Willis with murder in the first degree. At trial, Willis's younger sister, Earnetra Turner, and Willis's friend, Kavahn Matthews-Smith, testified that Tucker was shot during an attempted robbery. Tucker had been supplying Turner with marijuana for some time, but was angry at her because she would not have sex with him.[1] On the night of his death, Tucker had left Turner at the Motel 6 when she, once again, refused to have sex with him.

Willis, Matthews-Smith, and two other people used Turner's cell phone to lure Tucker back to the Motel 6, planning to rob him. But, when they confronted Tucker he charged at them. In the struggle that followed, Willis ended up shooting Tucker. Text messages exchanged between Willis, the other witnesses, and Tucker indicate that there was a plan to rob Tucker.

At trial, Willis denied that he attempted to rob Tucker. He testified that he went to the Motel 6 just to pick up his younger sister. Willis testified that Tucker became violent when Willis tried to leave with Turner. According to Willis, he accidentally shot Tucker in the struggle that followed.

The State played audio recordings of Detective Bartlett's pretrial interview with Willis for the jury. During the interview, Willis repeatedly denied being at the Motel 6 or being involved in any way with Tucker's death. He also initially denied

---

[1] At that time, Tucker was 47 years old and Turner was 16 years old.

knowing his sister, Turner. Detective Bartlett testified that, during the interview, she had told Willis things that were not true to elicit responses from him. Willis's counsel cross-examined Detective Bartlett at length about her strategies during the interview.

The jury found Willis guilty of first degree murder. After the jury delivered its verdict, the attorneys and their investigators met informally with the jury. Several jurors teased Detective Bartlett about her lack of a poker face. Some joked that she was trying to tell them not to believe Willis while he was testifying.

Willis moved for a new trial, arguing that Detective Bartlett's facial expressions amounted to unsworn and improper testimony about her opinion of Willis's guilt. Willis also sought access to the jurors' contact information. The court denied Willis's motion.

Willis appeals.

ANALYSIS

Opinions on Guilt – Invited Error

Willis argues that his right to a fair trial was violated when Detective Bartlett expressed her current opinion on his guilt at the time of trial. The State argues that Willis invited any error by eliciting the challenged testimony from Detective Bartlett during cross-examination. We agree with the State.

Under the invited error doctrine, "a party who sets up an error at trial cannot claim that very action as error on appeal and receive a new trial." State v. Momah, 167 Wn.2d 140, 153, 217 P.3d 321 (2009). In determining whether the defendant invited the error, the court considers "whether the defendant affirmatively assented

to the error, materially contributed to it, or benefited from it." In re Coggin, 182 Wn.2d 115, 119, 340 P.3d 810 (2014). The defendant must engage in "some type of affirmative action through which he knowingly and voluntarily sets up the error." State v. Mercado, 181 Wn. App. 624, 630, 326 P.3d 154 (2014).

The invited error doctrine applies when a defendant objects to testimony that was given as a direct response to his questions. See, e.g., State v. McPherson, 111 Wn. App. 747, 764, 46 P.3d 284 (2002) (holding that any error in admitting testimony alleged to be an opinion on guilt was "clearly invited" because it was a "direct response" to the defense's question); State v. Vandiver, 21 Wn. App. 269, 273, 584 P.2d 978 (1978) (holding that the invited error doctrine precluded review of statements made by witnesses in response to defense's questions).

The State bears the burden of proving invited error. State v. Thomas, 150 Wn.2d 821, 844, 83 P.3d 970 (2004).

Here, Willis argues that the trial court erroneously admitted opinions on his guilt. Personal opinions on the defendant's guilt and credibility are improper because they invade the defendant's right to have a jury determine the facts. State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). Because police officers, like the prosecution, represent the State, their opinions are "especially likely" to influence the jury. Demery, 144 Wn.2d at 762-63.

Willis argues that two of Detective Bartlett's statements were improperly admitted. First, on cross-examination during the State's case-in-chief, Willis's counsel asked Detective Bartlett about the way she had interviewed Willis. His

counsel emphasized that Detective Bartlett had told Willis that it was significant whether he had always intended to rob and kill Tucker or had intended only to rob Tucker but killed him in the struggle that ensued:[2]

> [Defense Counsel:]  So you tell him, "I don't think you planned a murder, but I think this was a [robbery]."
>
> In fact, I counted, and I think you tell him about 12 times that you don't think he intended to murder anybody, but you do believe that he intended to rob somebody?
>
> [Detective Bartlett:]  I do believe that he intended to rob Herman Tucker.
>
> [Defense Counsel:]  So given that, that you are telling him over and over and over again and he is denying that he intended to rob him, but you absolutely are not listening to him.  Do you ever offer him --[3]

It is clear that Detective Bartlett, adopting the tense used by Willis's counsel, was describing what she told Willis during the interview, not her view of his guilt at the time of her testimony.  There was an implied, "I was telling him that" before her answer, which Willis's counsel understood.  Willis's counsel's response was to say that Detective Bartlett was telling Willis "that" – apparently her belief that he intended to rob Tucker – over and over again.  She continued to ask Detective Bartlett about what she said during the interview, without a request for clarification.

Detective Bartlett made the second statement on cross-examination during the State's rebuttal.  Willis's counsel returned to the subject of Detective Bartlett's

---

[2] According to the defense, this was not true, because both could be charged as first degree murder.  But, as the State points out, there is a difference.  Homicide may be charged as first degree murder when it is premeditated or committed in the course of a robbery or attempted robbery. RCW 10.95.030(1). But premeditated murder committed in furtherance of a robbery may be charged as aggravated first degree murder.  RCW 10.95.020(11)(a).

[3] Report of Proceedings (RP) (June 1, 2015) at 47.

interview with Willis. This time, counsel emphasized that Detective Bartlett's interview strategy had involved lying to Willis. She suggested that Detective Bartlett and Willis were "playing with each other back and forth" and "trying to hide from each other" what they knew.[4] After Detective Bartlett said that she had given Willis "every opportunity to say that he was trying to rescue his sister," Willis's counsel asked:

> [Defense Counsel:] Well, let's see. You said you gave him every opportunity. But, in fact, there were eight times, and we can go through there, that you absolutely told him I don't believe you, and I think you did this for sure. Starting with number one of page 18.
>
> [Detective Bartlett:] I do believe that he committed this murder.
>
> [Defense Counsel:] Okay. And you --
>
> [Detective Bartlett:] That's not a lie.
>
> [Defense Counsel:] And no matter what he told you from page 18 all the way to the last page you told him I don't believe you. Absolutely don't believe that I think maybe you didn't murder him, but I think you went there to do a [robbery], and I don't believe otherwise; isn't that true?
>
> [Detective Bartlett:] I said that I believe that you went there to rob him. I had the text messages and I believed it.[5]

Again, Detective Bartlett was clarifying what she had said to Willis during the interview and not improperly stating her opinion on his guilt at the time of trial. Counsel had just directed her to page 18 of the transcript of her interview, which included her statement to Willis that the crime looked to her, "like murder one."[6] Willis's counsel used the present tense as she paraphrased Detective Bartlett's

---

[4] RP (June 9, 2015) at 982.
[5] RP (June 9, 2015) at 982-83.
[6] Ex. 77 at 18.

statements during the interview back to her, and Detective Bartlett responded in the same tense.

Apparently reading along, Detective Bartlett responded that she believed that Willis committed the murder. She completed her answer by saying, "That's not a lie."[7] It is reasonable to conclude that the "that" refers to both what she had just said and her statement during the interview, suggesting that the former is just a restatement of the latter.

As before, Willis's counsel continued with her line of questioning, without indicating that she believed Detective Bartlett was improperly referring to her opinion at the time of trial. Further, Detective Bartlett's next response made it clear that the line of questioning was about what she had said and believed during the interview.

Willis's counsel's questions to Detective Bartlett about what she said or believed during the interview were affirmative and voluntary acts. They created or materially contributed to Detective Bartlett's testimony. Accordingly, we conclude that Willis invited any error in eliciting her testimony and, therefore, cannot challenge it on appeal.

Willis argues that he did not invite any error because Detective Bartlett offered her opinion at the time of trial, not her opinion during the interview, and consequently her answers were not responsive to the questions. We reject this argument for two reasons. First, as just explained, although she gave her answers in the present tense, Detective Bartlett was describing what she said and believed

---

[7] RP (June 9, 2015) at 982.

during the interview.

Second, the invited error doctrine may apply even when a witness gives a more detailed answer than the question calls for. For example, in State v. Vandiver, the defendant's counsel asked a witness if he had arrested the defendant pursuant to a warrant. 21 Wn. App. at 273. The witness responded that he had not had a warrant but had received permission from the defendant's parole officer. Vandiver, 21 Wn. App. at 273. The Court of Appeals held that the defendant had invited any error in admitting this evidence of the defendant's criminal history. Vandiver, 21 Wn. App. at 273.

Here, by aggressively questioning Detective Bartlett about her interview strategies, Willis's counsel invited her to explain herself. Her explanation gave more information than was strictly necessary to answer the question, but was clearly related to her answer. Thus, we conclude that, even if Detective Bartlett's answers were not directly responsive to Willis's counsel's questioning, Willis invited the error.[8]

*Ineffective Assistance of Counsel*

The State argues that Willis cannot challenge Detective Bartlett's statements on appeal because he failed to object at trial. Willis argues that he received ineffective assistance of counsel when his trial counsel failed to object to Detective Bartlett's testimony.

But Willis does not argue that he received ineffective assistance of counsel

---

[8] Willis argues that he can raise the issue for the first time on appeal as a manifest error affecting a constitutional right under RAP 2.5(a)(3). But a defendant may not raise an error on appeal that he invited, even if that error is a manifest error affecting a constitutional right. State v. Henderson, 114 Wn.2d 867, 870, 792 P.2d 514 (1990).

8

because his trial counsel questioned Detective Bartlett about her opinions and statements at the time of the interview. In fact, Willis acknowledges that Detective "Bartlett's opinion at the time of the interrogation was certainly relevant to" the defense's theory that Willis did not tell Detective Bartlett the truth during the initial interview because he did not trust her, and that his lack of trust was justified.[9] Since Willis is not arguing that his counsel was ineffective for pursuing the line of questioning that invited the error, it is irrelevant whether Willis's trial counsel was ineffective for failing to object to any error.

## Motion for a New Trial

Willis argues that the trial court abused its discretion when it denied his motion for a new trial. Specifically, he argues that Detective Bartlett's facial expressions while seated at the State's counsel table amounted to unsworn and improper opinion testimony on his guilt, which, in turn, constituted extrinsic evidence considered by the jury or a serious trial irregularity. We disagree. Because the record does not establish that Detective Bartlett's facial expressions amounted to opinions on guilt, Willis cannot show the prejudice required for a new trial.

The trial court may order a new trial when certain events occur during trial that materially affect one of the defendant's substantial rights. CrR 7.5(a). "A new trial is warranted in such circumstances only when the defendant 'has been so prejudiced that nothing short of a new trial can insure that the defendant will be treated fairly.'" State v. Pete, 152 Wn.2d 546, 552, 98 P.3d 803 (2004) (internal

---

[9] Reply Br. of Appellant at 8.

quotations omitted) (quoting State v. Bourgeois, 133 Wn.2d 389, 406, 945 P.2d 1120 (1997)).

When determining whether to grant a new trial, the court may not consider matters that inhere in the verdict. Cox v. Charles Wright Acad., Inc., 70 Wn.2d 173, 179, 422 P.2d 515 (1967). Factors inhering in the jury's process, and thus in the verdict itself, include the "mental processes by which individual jurors reached their respective conclusions, their motives in arriving at their verdicts, the effect the evidence may have had upon the jurors or the weight particular jurors may have given to particular evidence, [and] the jurors' intentions and beliefs." Cox, 70 Wn.2d at 179-80. Statements concerning matters that inhere in the verdict "are inadmissible to impeach the verdict." Cox, 70 Wn.2d at 180.

For example, in State v. Bourgeois, the court had to determine the effect of two trial irregularities. 133 Wn.2d at 408-09. Both were alleged incidents of spectator misconduct: first, two spectators glared at a witness, and second, one of those spectators made a gun gesture at the witness with his hand. Bourgeois, 133 Wn.2d at 408. The court quickly dismissed the glaring, noting that the difference between glaring and staring "is largely a subjective determination." Bourgeois, 133 Wn.2d at 408. The Supreme Court acknowledged that the gun gesture could be viewed as a threat to discourage the witness from testifying but concluded there was no indication the defendant directed the spectator to make the gesture. Bourgeois, 133 Wn.2d at 409. In reaching that conclusion, the court deemed irrelevant the fact that one of the jurors had assumed that the spectator who made the gun gesture was associated with the defendant in some way, because the

10

juror's assumption showed the juror's "thought process" and, therefore, inhered in the verdict. Bourgeois, 133 Wn.2d at 409.

We will not reverse a trial court's ruling on a motion for a new trial absent a clear abuse of discretion, which occurs when no reasonable judge would have reached the same conclusion. Pete, 152 Wn.2d at 552.

Here, immediately after the trial ended, the prosecutors, defense attorneys, defense investigator, and Detective Bartlett spoke informally with members of the jury. The attorneys, investigator, and Detective Bartlett all submitted sworn statements describing their conversation.[10] According to the defense investigator, one juror said that Detective Bartlett "wins a prize for the most facial expressions."[11] Similarly, according to one of the defense attorneys, "several jurors told [D]etective Bartlett that she, 'has more facial expressions than anyone they had ever seen.'"[12] One of the prosecutors agreed that several "jurors told Detective Bartlett that she had very expressive eyes and face."[13]

Another juror told Detective Bartlett that she "should not play poker" because the jurors could read her facial expressions.[14] And one juror commented, "'Oh yeah you definitely were trying to tell us not to believe Mr. Willis.'"[15] The State's witnesses agreed that several jurors teased Detective Bartlett about her lack of a poker face and that some had joked that Detective Bartlett was trying to

---

[10] Neither of the parties have raised hearsay concerns about the fact that the affidavits are from non-jurors, recollecting the jurors' statements, rather than affidavits from the jurors themselves.

[11] Clerk's Papers (CP) at 97.

[12] CP at 93.

[13] CP at 223.

[14] CP at 93.

[15] CP at 93.

tell them not to believe Willis when he testified.

Detective Bartlett stated that she was not aware of having made any "observable expressions with [her] eyes or face during trial while seated at counsel table."[16] She also stated that she did not intend to "convey any message or information or to influence the jury in any way with any expressions."[17] Neither side stated that they had observed Detective Bartlett make any particular gestures or facial expressions during trial.

But before reaching Willis's arguments about what impact Detective Bartlett's facial expressions may have on the trial, we must determine whether any statements in the affidavits contain matters that inhere in the verdict.

The affidavits contain descriptions of how the jurors interpreted Detective Bartlett's facial expressions. By saying (1) that Detective Bartlett lacked a poker face, or (2) was trying to tell them not to believe Willis, the jurors offered their conclusions about whether she was intending to express a particular message.[18]

We disregard both conclusions because such determinations inhere in the verdict. Therefore, we consider Willis's claims based solely on the objective descriptions of Detective Bartlett's facial expressions contained in the affidavits: there were many of them, her eyes and face were very expressive, and no one else involved in the trial observed her making them.

---

[16] CP at 220.
[17] CP at 220.
[18] In fact, these two conclusions demonstrate how individuals may interpret the same facial expressions in different ways. Saying Detective Bartlett has no poker face suggests that other people can tell what she is thinking or feeling, despite her attempts to conceal her thoughts. That is the opposite of the jurors' other conclusion, that Detective Bartlett was deliberately trying to convey a specific message with her facial expressions.

Willis contends that Detective Bartlett's facial expressions constituted extrinsic evidence or a serious trial irregularity. He also argues that the jurors' observations of Detective Bartlett's facial expressions require a new trial because substantial justice was not done. As noted above, a new trial is not warranted absent a strong showing of prejudice. Pete, 152 Wn.2d at 552.

Willis argues that he was prejudiced because Detective Bartlett's facial expressions amount to her giving her opinion on his guilt or credibility. For example, in his brief, Willis implies that Detective Bartlett expressed her opinion on Willis's credibility through "physical manifestations of disdain, disgust and/or disbelief."[19] The record does not support that implication. The affidavits do not contain any descriptions of these alleged physical manifestations, nor did any of the jurors say that Detective Bartlett expressed disdain, disgust, or disbelief. Therefore, regardless of whether the expressions might constitute extrinsic evidence or a trial irregularity, we conclude that there is nothing in the record to establish that Detective Bartlett's facial expressions amounted to an opinion on guilt.

Without an opinion on guilt, Willis cannot show prejudice. And, without prejudice, Willis cannot show he is entitled to a new trial. Therefore, we conclude that the trial court did not err by denying Willis's motion for a new trial, and we do not consider whether Detective Bartlett's facial expressions amount to extrinsic evidence or trial irregularities.

---

[19] Br. of Appellant at 32.

13

*Sufficiency of the Record*

Willis argues that, if the record is insufficient to determine whether Detective Bartlett's facial expressions warrant a new trial, we should conclude that the trial court abused its discretion when it denied Willis's request to interview the jurors. Because Willis did not establish good cause below, we disagree.

"Individual juror information, other than name, is presumed to be private." GR 31(j). After the conclusion of a jury trial, the court may allow a party's attorney access to juror information upon a showing of good cause.

We review the trial court's decision on access to juror information for an abuse of discretion. State v. Blazina, 174 Wn. App. 906, 909, 301 P.3d 492 (2013). The trial court abuses its discretion when the decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" Blazina, 174 Wn. App. at 909-10 (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

In his request to interview the jurors, Willis did not show good cause. He argued that he needed to access the jurors' information to make a record of "how they considered the facial expressions of Detective Bartlett."[20] Willis also stated that he "must be allowed to question the jurors about the facts and extrinsic evidence that was considered by the jurors to show that the misconduct occurred."[21]

At oral argument below, Willis argued that, while that the parties and the court knew "that the exaggerated facial expressions were not[iced] by the jurors,

---

[20] CP at 91.
[21] CP at 88.

otherwise, they wouldn't have noted them," unless they spoke to the jurors, they could not know whether the jurors observed Detective Bartlett's face while she was at counsel table or while she was testifying.[22] Willis argued that they also did not know if the jurors did not believe Willis because of Detective Bartlett's facial expressions, which was "exactly why [Willis] wanted to talk to them."[23]

In its oral ruling, the trial court stated that, during their conversation with the jurors, the parties disclosed "previously inadmissible character evidence about" Tucker.[24] The court was concerned that the jury's impressions might have been contaminated by this information. The court also stated that it had not observed anything out of the ordinary during trial.

Ultimately, the trial court denied Willis's request because it determined that Willis was seeking information that inhered in the verdict. First, the court assumed that the jurors observed Detective Bartlett's facial expressions while she sat at counsel table.[25] The court then stated that "[t]he only additional information that the defendant appears to want has to do with such matters as how the jurors interpreted Detective Bartlett's facial expressions, whether and how they were discussed in deliberations, and/or whether and how they affected the verdict."[26]

We conclude that the trial court did not abuse its discretion in denying Willis's motion to interview the jurors. Willis did not show that he was seeking more

---

[22] RP (July 1, 2015) at 6-8.
[23] RP (July 1, 2015) at 8:22-9:1.
[24] RP (July 1, 2015) at 33.
[25] In his opening brief, Willis objects to the court assuming this instead of actually finding it from the facts. But, as mentioned above, Willis himself said the court could not determine when the jurors were observing Detective Bartlett from the current record.
[26] CP at 189.

15

information about the precise nature of the facial expressions and, thus, did not establish good cause.[27] Moreover, the trial court's concern that the juror's impressions of the trial may have been contaminated by learning negative facts about the victim's character was not unreasonable.

## Cumulative Error

Willis argues that, even if neither Detective Bartlett's testimony nor her facial expressions alone requires reversal, the combination of the two require reversal under the cumulative error doctrine. "Under this doctrine, a defendant may be entitled to a new trial when errors, even though individually not prejudicial, cumulatively result in a trial that was fundamentally unfair." State v. Asaeli, 150 Wn. App. 543, 597, 208 P.3d 1136 (2009). Here, Willis has not established that there were multiple errors or that any of the errors resulted in a fundamentally unfair trial. His arguments, again, assume that Detective Bartlett's testimony was improper and that her expressions amounted to opinions on guilt. We reject these arguments for the reasons stated above.

## Appellate Costs

Willis asks that no costs be awarded on appeal if the State substantially prevails. Appellate costs are generally awarded to the substantially prevailing party on review. RAP 14.2. But, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk

---

[27] On appeal, Willis focuses on the need to have jurors describe "precisely what they saw as Detective Bartlett made facial expressions from [the] counsel table." Br. of Appellant at 42. He contends that this information is necessary to complete the record and does not inhere in the verdict. We agree that jurors' accounts of their observations would not inhere in the verdict. But, since Willis did not make that request below, he cannot raise it now. RAP 2.5(a).

determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last determination of indigency." RAP 14.2.

Here, the trial court found that Willis was impoverished. We assume that Willis is still indigent. The State may file a motion for costs with the commissioner if it has evidence indicating that Willis's financial circumstances have significantly improved since the trial court's determination.

Affirmed.

Trickey, ACJ

WE CONCUR:

_Mann, J._         _Spearman, J._